# EXHIBIT 7

STOCK PURCHASE AGREEMENT

**THIS AGREEMENT** is entered into to be effective on the 3rd day of March 2014, between LOREN C. STIEG ("Seller") of 17526 Seven Mile Road, Reed City, Michigan 49677 and UUSI, LLC, doing business as NARTRON ("Purchaser") of 5000 North Old US-131, Reed City, Michigan 49677.

Recitals:

A. Seller will own one hundred (100%) percent of stock in Colorado based Corporation known as S & S Innovations Corp. (the "Corporation"), at the closing of the Stock Purchase Agreement, dated January 23, 2014, between LOREN C. STEIG (51%) owner and BRAD STIEG (49%) owner on or before March 23, 2014.

B. Upon the closing of said transaction forty-nine (49%) percent of S & S INNOVATIONS Corp. stock shall immediately thereafter sell to Nartron Purchaser), for equity consideration in the Corporation in the amount of Four Hundred Ninety Thousand ($490,000.00) U.S. Dollars.



Agreement:

IN CONSIDERATION of the Recitals and the mutual covenants set forth below, the Parties agree as follows:

1. Sale of Shares: Seller shall sell and transfer to Purchaser, and Purchaser shall purchase and acquire from Seller, forty-nine (49%) percent of the shares of the Corporation owned by Seller, i.e. Ninety-Eight (98) Shares of common stock.

2. Purchase Price: The purchaser price for all such shares is Four Hundred Ninety Thousand ($490,000.00) U.S. Dollars payable to Seller in certified funds.

3. Representations of Seller: Seller represents and warrants to the Purchaser as follows:

   a. That Seller is the record and beneficial owner and has good and valid merchantable title of the Seller's stock, free and clear of any and all mortgages, pledges, liens, security interests, conditional sale agreements, charges, restrictions, and encumbrances of every nature.

   b. That Seller has the power and authority to execute and deliver this Agreement, to consummate the transactions contemplated by this Agreement, and to take any and all other action, including Board Resolutions required to be taken by Seller pursuant to the provisions of this Agreement.

   c. This business is not in financial distress.

   d. There are only Two Hundred (200) issued shares of common stock.

   e. There are no other outstanding shares or options, warrants or other class of stock.

Case 1:18-cv-01377-RLM-PJG ECF No. 32-1 filed 05/29/20 PageID.559 Page 3 of 5

f. That Seller is a shareholder actively engage in the conduct of the business of the Corporation.

4. Company Relocation: Immediately upon completion of this transaction, the entire operation known as S. & S INNOVATIONS (a/k/a "Tattler Reusable Canning Lids") shall be moved from its present location in Colorado, to the Nartron facilities located north of Reed City, Michigan, where production and related operations shall be continued.

5. Securing Corporate Assets: After he closes on his purchase of the minority shares of Brad Stieg's stock, Purchaser will promptly obtain and secure all Corporate property in Colorado, including, but not limited to, molds, molding machine(s)and peripherals, commercial fixtures, equipment, production and office supplies, inventory, stationary, bill heads, envelopes, check book(s), canceled and blank checks, computers, computer hardware and software, desks, file cabinets, customer and supplier lists, advertising materials, corporate record books, seal, By-Laws, Stock Certificates, invoices, paid and unpaid bills, accounts payable and receivable and the like as well as the Corporate Website and e-mail passwords.

6. Disclaimer: Seller has been the majority shareholder of the Corporation since its inception. By closing this Agreement, Seller and Purchaser each acknowledge that they are adequately familiar with the product business operations of the Corporation, profit and loss statements, and the extent of all assets and liabilities of the Corporation.

7. No Subsidiaries: Said Corporation does not have any subsidiaries or directly or indirectly own any interest or have any investment in any other corporation, limited liability company, partnership, or other business entity.

8. No Insolvency/Best Knowledge: No insolvency proceeding of any character, including, without limitation, bankruptcy, receivership, reorganization, composition or arrangement with creditors, voluntery or involuntary affecting the Corporation or any of it assets or properties is pending or, to the Best Knowledge of Seller, likely or threatened. Seller has not taken any action in contemplation of, or that would constitute the basis for, the institution of any such insolvency proceedings. For the purpose of this Agreement, the phrase "Best Knowledge of Seller, or words or similar import, individually and the Corporation would have after due, careful and diligent inquiry into the matters in question.

9. No Adverse Changes: Since January 1, 2014, there has not been any occurrence, condition or development that has adversely affected, or is likely to adversely affect, the Corporation, its prospects, its condition (financial or otherwise), its affairs, its operations, the Business, or the Purchased Assets, according to the best knowledge of Seller.

10. Claims and Litigation: There are no unpaid judgments, claims, disputes, actions, suits, judicial, administrative, arbitrations, regulatory or proceedings, or investigations pending or, to the Best Knowledge of the Seller Parties, threatened against or directly affecting Seller, the Corporation, the Business, or the Purchased Assets.

11. No Undisclosed Liabilities: Except as specifically disclosed to Purchaser, other than routine day-to-day operating expenses, the Corporation does not have any liabilities or

obligations, whether accrued, absolute, contingent, or otherwise, and to the Best Knowledge of Seller there exists no fact or circumstance that give rise to any such liabilities or obligations in the future.

12. No Unpaid Tax Liabilities: The Corporation has filed on a timely basis all Tax Returns it is required to file under federal, state, or local law and has paid or established an adequate reserve with respect to payment of all Taxes for the periods covered by such Returns. No agreements have been made by or on behalf of Seller or the Corporation for any wavier or for the extension of any statute of limitations governing the time of assessment or collection of any Taxes. Neither the Seller, the Corporation nor it officers has received any notice of any pending or threatened audit by the IRS or any state or local agency related to the Corporation's Tax Returns or Tax liability for any period, and no claim for assessment or collection of any Taxes has been asserted against Seller or Corporation for such liability. Further, there are no federal, state or local tax liens outstanding against any of Corporation's assets (including, without limitations, the Purchased Assets) or the Business.

13. Compliance with Laws: At all times before the Closing Date, Seller has complied with all laws, orders, regulations, rules, decrees, and ordinances affecting to any extent or in any manner any aspects of the Business or the Purchased Assets.

14. Representations and Warranties of Purchaser: Purchaser represents and warrants to Seller as of the date of this Agreement and as of the Closing that:

A. Purchaser has full power and authority to execute and deliver this Agreement and to perform his obligations under it, and that this Agreement constitutes the valid and legally binding obligation of Purchaser, enforceable in accordance with its terms and consideration; and

B. Neither the execution and delivery of this Agreement nor the consummation of the transactions contemplated by this Agreement will constitute a default under or require any notice under any agreement to which Purchaser is a party or by which he is bound; and

C. That Purchaser/Member is a native born citizen of the United States of America.

Contingent Conditions:

15. The obligation of Purchaser to consummate the transactions contemplated by this Agreement is subject to satisfaction of the following conditions:

A. The representations and warranties made by Seller in this Agreement are correct in all material respects at the Closing; and

B. Seller has performed and complied with all of his covenants made in this Agreement in all material respects at the Closing; and

C. There is not any injunction, judgment, order, decree, ruling, charge, or matter in effect that prevents or may prevent consummation of any of the transactions contemplated by this Agreement.

16. Transfer of Stock to Purchaser: Within ten (10) days of Seller's purchase of the remaining shares of this Corporation from Brad Stieg, Seller will enter Purchaser's name on the corporate books as a holder of Ninety-Eight (98) shares, being Forty-Nine (49%) percent of the issued shares of said Corporation and issue Purchaser a Stock Certificate evidencing the same.

17. No Other Warranties: Except for the warranties given by Seller and Purchaser in Paragraphs Three (3) to Fourteen (14) of this Agreement, neither Party has made and is not giving the other any warranty or made any representation. However, all such warranties, representations and obligations by either Party as contained herein shall survive the closing of this sale.

18. Attorney's Fees and Expenses/Enforcement: In the event of a default by or disagreement between the Parties as to any of the representations, warranties, terms, covenants or conditions of this Agreement and all related Agreements if a lawsuit is filed as the result, the prevailing party in the same shall recover his/her/its court cost, expenses of suit and reasonable attorney fees.

19. Expenses: Each of the Parties shall pay all of the costs that it incurs incident to the preparation, execution, and delivery of this Agreement, any related documents and the performance of any related obligations, whether or not the transactions contemplated by this Agreement shall have been consummated.

20. No Brokerage Fees Due: The Corporation and the Seller represent and warrant that all negotiations relative to this Agreement have been carried on by and between them directly with their appropriate representatives without the intervention of any third person other than Certified Public Accounts and/or Attorneys at Law and that no broker's or finder's fees are due anyone regarding this transaction. Each does hereby indemnify each other and agree to hold each other harmless against and in respect of any claim for brokerage or other commissions relative to this Agreement.

21. Notices: That any notice required herein shall be given to the other Party in writing personally delivered, by e-mail or regular first class mail with sufficient postage prepaid thereon.

22. No Oral Modification: No changes, additions or subtractions from the terms or conditions of this Agreement or waivers thereof shall have any effect unless mutually agreed to in writing and signed by both Parties.

23. Complete Agreement: This is the full and complete Agreement of the Parties concerning this transaction. It does not include any prior negotiations, representations or understandings not expressly contained herein.

24. Severability: That if any provision of this Agreement is held to be invalid, illegal or unenforceable, that will not affect or impair, in any way, the validity, legality or

enforceability of the remainder of this Agreement; and

25. Governing Law: This Agreement shall be governed in accordance with the laws of the State of Michigan.

26. Venue: The exclusive, only and proper venue for any litigation involving this or any related Agreement, Promissory Notes, etc. shall be the Circuit Court in and for the County of Osceola and State of Michigan.

The Parties have read, understood, agreed and executed this Agreement on the date listed on the first page.

SELLER:

[signature]

LOREN C. STIEG
DATED: 2/3, 2014.

IN THE PRESENCE OF:

[signature]

PURCHASER:

UUSI, LLC
A Michigan Limited Liability Company,
d/b/a Nartron

By: [signature]
NORMAN A RAUTIOLA,
Its: Managing Member
DATED: 2-27, 2014.

IN THE PRESENCE OF:

S.B. Rautiola