# EXHIBIT 24

STATE OF MICHIGAN

IN THE 49th CIRCUIT COURT FOR THE COUNTY OF OSCEOLA

---

UUSI, LLC, and NORMAN RAUTIOLA,

                    Plaintiffs,


v                                          File No. 16-14662-CK


LOREN STIEG, S&S INNOVATIONS CORPORATION,

and TATTLER REUSABLE CANNING LIDS, LLC,


                    Defendants.

_____/




JURY TRIAL

VOLUME III OF IV

BEFORE THE HONORABLE SCOTT HILL-KENNEDY, CIRCUIT JUDGE

Reed City, Michigan - Thursday, October 11, 2018

1

| | | |
|---|---|---|
| 1 | | required through Nartron facilities," right? |
| 2 | A | That's correct. |
| 3 | Q | And then it says -- and I have gone over.  There are some |
| 4 | | other lines here that -- well, I'll get to it -- and that |
| 5 | | "Attorney Talaske is to provide documents representing the |
| 6 | | foregoing."  So it says, as you've said, he's proposing to |
| 7 | | go to Attorney Talaske's office, right? |
| 8 | A | That's correct. |
| 9 | Q | "And Attorney Talaske would also close-out Corporate S&S |
| 10 | | and create Tattler Home Products, with LLC ownership of |
| 11 | | Loren and Norman," correct? |
| 12 | A | Correct. |
| 13 | Q | However, Tattler Home was formed without you being a |
| 14 | | member.  It was Mr. Rautiola and Heather Huber, correct? |
| 15 | A | Correct. |
| 16 | Q | Did you ever agree to this? |
| 17 | A | No. |
| 18 | Q | And it was in this letter that it also said, "Loren to be |
| 19 | | paid $100,000 a year, Dee Stieg to be paid 50,000," right? |
| 20 | A | That's correct. |
| 21 | Q | So the offer to pay 100,000 and 50,000 was all part of the |
| 22 | | package; you also had to agree to be the 34 percent owner, |
| 23 | | right? |
| 24 | A | Yes. |
| 25 | Q | And that's one reason you didn't agree to that? |

| | | |
|---|---|---|
| 1 | Q | All this is falling apart -- |
| 2 | A | Right. |
| 3 | Q | -- as we've already explained, right? |
| 4 | A | Correct. |
| 5 | Q | Was any of this inventory given to you?  This is S&S |
| 6 | | inventory? |
| 7 | A | Every bit of it. |
| 8 | Q | This wasn't delivered to the new company, Tattler Home |
| 9 | | Products, this went to S&S? |
| 10 | A | Oh, it was S&S originally. |
| 11 | Q | Yeah. |
| 12 | A | But it was delivered to Tattler Home Products. |
| 13 | Q | Well, wait a minute.  It was S&S and it was delivered to |
| 14 | | Nartron? |
| 15 | A | Correct. |
| 16 | Q | Tattler Home Products then took possession of it? |
| 17 | A | Yes. |
| 18 | Q | Was that your permission to give it to Tattler Home |
| 19 | | Products? |
| 20 | A | Absolutely not. |
| 21 | Q | Accounts receivable; send out a bill, get paid. $130,000? |
| 22 | A | Correct. |
| 23 | Q | Was any of that given to you; did S&S get that money? |
| 24 | A | No.  And that's interesting because those checks would |
| 25 | | have come in the name of S&S Innovations because that's |