UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

S&S Innovations Corp.,

      Plaintiff,

v.

UUSI, LLC, et al.,

      Defendants.

Hon. Hala Y. Jarbou

Case No. 1:18-cv-1377-HYJ-PJG

_____/

**REPORT AND RECOMMENDATION**

This matter is before the Court on a show-cause order regarding defense counsel, Kenneth B. Morgan's, continued failure to appear in court and his repeated violation of the orders of this Court. (ECF No. 127). A hearing was held on April 6, 2021, at which Mr. Morgan appeared, along with Plaintiff's counsel. (Minutes, ECF No. 128). Having considered Mr. Morgan's explanations, in the context of the record of this case, and for the reasons stated herein, the undersigned judicial officer finds that there is clear and convincing evidence that Mr. Morgan has engaged in the following contemptuous conduct:

    1.    Failing to appear in Court on April 2, 2021 (Minutes, ECF No. 126);

    2.    Violating the Court's February 23, 2021, order awarding $2,625.00 in costs in favor of Plaintiff, to be paid by March 25, 2021, from Mr. Morgan's personal funds (ECF No. 102); and

    3.    Violating the Court's March 5, 2021, order of contempt, ordering Mr. Morgan to pay a $3,000.00 sanction to the Clerk of the Court by April 5, 2021 (ECF No. 109).

Accordingly, the undersigned judicial officer certifies the facts contained in this report and recommendation for purposes of the Certification of Civil Contempt and Order to Show Cause, which will be filed herewith.[1]  A show-cause hearing has been scheduled before the Honorable Hala Y. Jarbou for **April 30, 2021, at 10:00 a.m.**, at 128 Federal Building, 315 West Allegan Street, Lansing, Michigan.  The undersigned recommends that Judge Jarbou adjudge Mr. Morgan to be in civil contempt of Court, and to impose the recommended sanctions, as set forth below.

In addition, and for the reasons stated herein, the undersigned recommends that the Court render a default judgment against Defendants as to the remaining claims.[2]  *See* FED. R. CIV. P. 37(b)(2)(A)(vi).  This recommendation is based both on Defendant counsel's contumacious conduct and that the record – recounted below in detail – demonstrates that Defendants have deliberately engaged in concerted effort to delay and obstruct the proceedings in this case.

---

[1] Pursuant to 28 U.S.C. § 636(e)(6)(B), where "[an] act constitutes civil contempt, the magistrate judge shall forthwith certify the facts to a district judge and may serve or cause to be served upon any person whose behavior is brought into question . . . an order requiring such person to show cause why that person should not be adjudged in contempt by reason of the facts so certified."

[2] On January 4, 2021, the Court entered summary judgment in favor of Plaintiff and against Defendant Tattler Home Products, LLC with respect to Counts I, II, III, and V; and against Defendant UUSI, LLC with respect to Counts I, II, and III.  (*See* ECF No. 64, 65).  Count IV remains against Defendant Tattler Home Products; Counts IV and V remain against Defendant UUSI; and all five counts remain against Defendant Norman Rautiola.

## Certified Facts and Procedural History

Plaintiff filed the complaint on December 12, 2018.  (ECF No. 1).   On January 7, 2019, Defendants filed a motion to dismiss pursuant to Rule 12(b)(6), arguing that the claims were barred by *res judicata* resulting from an earlier state case.  (ECF No. 8).  That motion was denied on March 12, 2020, with the Court noting that it could not grant dismissal under Rule 12(b)(6) based on the doctrine of *res judicata*, as that is an affirmative defense.  (*See* ECF No. 21, PageID.395).

During the pendency of the motion to dismiss, and in an effort to move the case along, Plaintiff filed a motion on February 11, 2020, for binding alternative dispute resolution, or in the alternative, for a Rule 16 conference.  (ECF No. 17).  Mr. Morgan failed to respond to Plaintiff's efforts to confer regarding this motion[3] (*see* ECF No. 18), and he failed to file a response to the motion.  The Court denied that motion on March 12, after the deadline for responding had passed and the same day it issued an order denying the motion to dismiss, noting that the Court would be scheduling a Rule 16 conference after Defendants' responses to the complaint were filed.  (ECF No. 22, PageID.398).[4]

---

[3] The local rules require counsel to confer with opposing counsel prior to the filing of nondispositive motions and in a "good-faith effort to resolve the dispute." W.D. MICH. LCIVR 7.1(d).  The purpose of this rule is to avoid unnecessary litigation and to conserve the resources of the Court.  As is evident from the record in this case, Mr. Morgan has consistently failed, with few exceptions, to respond to Plaintiff's efforts to comply with this requirement.

[4] The Honorable Paul L. Maloney presided over this case at that time.  This case was reassigned to the Honorable Hala Y. Jarbou on September 28, 2020.  (*See* Notice, ECF No. 53).

Defendants' deadline for answering the complaint was April 2, 2020.  After Defendants failed to file an answer, Plaintiff filed an application for default on April 3, 2020.  (ECF No. 23).  Mr. Morgan filed the answer three days later (ECF No. 24), and without seeking leave to file it out of time.  The undersigned has now had an opportunity to review the answer.

Of the 145 paragraphs in the Answer, 117 recite the same non-substantive response:

> Defendants neither admit nor deny the allegations contained in this paragraph of the complaint for the reason they are without sufficient information at this time upon which to form a belief as to the truth thereof.  Those persons with information sufficient to permit a more substantive response to those allegations are either deceased or otherwise unavailable at this time because of the current Covid-19 Emergency and various Executive Orders entered by the State of Michigan.

(*Id.* at PageID.403-36).

A review of the allegations in the complaint demonstrates that many of these responses are patently inappropriate.  For example, eight paragraphs in the complaint include specific factual allegations regarding matters within the personal knowledge of Defendant Norman Rautiola (*see* Complaint ¶¶ 16, 20, 23, 24, 28, 33, 34, 44, ECF No. 1, PageID.3-7), yet the response to each of these allegations is identical to that quoted above (*see* Answer ¶¶ 16, 20, 23, 24, 28, 33, 34, 44, ECF No. 24, PageID.405-10, 412).  Nothing in the Covid-related restrictions prevented Mr. Morgan from discussing these allegations with his client, Mr. Rautiola, by telephone.  Accordingly, there appears to be no justification for declaring an inability to admit or

4

deny those allegations.  The complaint also contains specific allegations regarding the filing of prior litigation in this Court and in the Osceola County Circuit Court involving S&S Innovations and UUSI (*see* Complaint ¶¶ 69, 71, 74, 76, ECF No. 1, PageID.11-12), yet again Defendants, including UUSI, provide the same canned response quoted above (*see* Answer ¶¶ 69, 71, 74, 76, ECF No. 24, PageID.419-21). Not only are these prior cases a matter of public record, the records indicate that Mr. Morgan represented UUSI in each case.  (*See* ECF No. 8-2, PageID.184-200 (Complaint, *UUSI, LLC v. Loren Stieg, S&S Innovations, and Tattler Reusable Canning Lids, LLC*, Case No. 1:15-cv-427 (W.D. Mich. April 22, 2015)); ECF No. 8-4, PageID.212-24 (Complaint, *UUSI, LLC v. Loren Stieg, S&S Innovations, and Tattler Reusable Canning Lids, LLC*, Case No. 16-14662-CK (Osceola Cty Cir. Ct, July 13, 2016))).  Moreover, these cases figured prominently in Defendants' motion to dismiss, which was filed prior to answering the complaint, and the prior state case is the very case Mr. Morgan cited as the basis for his *res judicata* argument in that motion.  (*See* Mtn Dismiss, ECF No. 8, PageID.173-74).  Defendants' assertions that they lack sufficient information to form a belief as to the truth of those allegations are specious.

Notably, nowhere in the Answer is there a hint at any affirmative defense, including *res judicata*.[5]  While the fact that Defendants raised *res judicata* in their motion to dismiss would likely avoid the consequences of waiver, *see Horton v. Potter*,

---

[5] "In responding to a pleading, a party must affirmatively state any . . . affirmative defense, including . . . res judicata. . . ."  FED. R. CIV. P. 8(c)(1).

5

369 F.3d 906,  (6th Cir. 2004) ("Failure to plead an affirmative defense in the *first responsive pleading* to a complaint generally results in a waiver of that defense.") (emphasis supplied), the failure to address this issue in the Answer is inexplicable. It certainly suggests, along with the non-substantive responses discussed above, that, at best, little thought or effort went into the drafting of this pleading, and likely, it reflects an intentional effort to obfuscate.

On April 8, 2020, the Court scheduled a Rule 16 conference for May 4, 2020, and it ordered the parties to file a joint status report by April 29, 2020.  (ECF No. 25). According to the Joint Status Report, the parties agreed to make their respective Rule 26(a)(1) disclosures by June 1, 2020, and to complete discovery by November 15, 2020.  (ECF No. 26, PageID.443-44).  The Initial Case Management Order adopted the deadline for Rule 26(a)(1) disclosures, but it did not include a discovery deadline. (ECF No. 28).  Instead, it provided a September 30, 2020, deadline for filing "early dispositive motions," presumably at the request of Defendants.[6]  (*Id.* at PageID.449).

---

[6] In the Joint Status Report, Defendants asserted that "the subject matter of this action was previously included in a prior action adjudicated in the State of Michigan Circuit Court for the County of Osceola.  Consequently, this action is barred as a matter of law by the doctrine of *res judicata* (claim preclusion)."  (ECF No. 26, PageID.443).  Mr. Morgan reasserted this contention during a February 23, 2021, hearing in which he advised the undersigned that he had already drafted a motion for summary judgment on the issue of *res judicata*, and that the motion would be filed the next day.  To date, no such undertaking has been filed.

On May 11, 2020, Plaintiff filed a motion for leave to amend the complaint. (ECF No. 29).  Once again, Mr. Morgan failed to respond to Plaintiff's efforts to consult (*see* ECF No. 30), and he failed to respond to the motion.  The Court granted the motion to amend the complaint on May 27, 2020, but only after the time for responding had expired.  (ECF No. 31).  Defendants' answer to the amended complaint was due June 12, 2020.  Defendants again missed their deadline.  On June 15, 2020, Plaintiff filed a second application for default.  (ECF No. 34).  Mr. Morgan filed the answer to the amended complaint later that day.  (ECF No. 35). That Answer mirrors the responses in the first answer, and like the first, fails to mention *res judicata*.[7]

On June 17, 2020, Plaintiff filed a motion to compel discovery, noting that Defendants had failed to produce their initial disclosures, in violation of the Case Management Order.  (ECF No. 37).  Plaintiff's counsel advised that Mr. Morgan did not respond to his efforts to confer (*see* ECF No. 38), and Defendants failed to file a response to the motion.

---

[7] During an August 18, 2020, hearing in which the Court addressed Plaintiff's second application for default, Plaintiff's counsel asked the Court, "at a minimum," to strike the answers as unresponsive to the factual allegations in the complaint.  The Court declined to entertain that request as it was not presented in a proper motion.  Having now had the opportunity to review the answers, it would appear that a motion to strike, had it been filed, may have had merit.  At the very least, the answers should have been stricken for failure to comply with Local Rule 8.2.  *See* W.D. Mich. LCivR 8.2 (requiring that each paragraph of the answer include a verbatim recital of the paragraph of the complaint to which it is responsive).

On July 13, 2020, the Court issued a notice scheduling a hearing on Plaintiff's motion to compel for July 27, 2020.  (ECF No. 39).  Mr. Morgan failed to appear at the scheduled hearing (Minutes, ECF No. 43), and he failed to contact the Court regarding his non-appearance.  The Court issued a show-cause order that same day, requiring counsel to appear in person on August 10, 2020, to explain why he should not be held in contempt or otherwise sanctioned for his failure to appear.  (ECF No. 44).  The undersigned's judicial staff also contacted Mr. Morgan by telephone, leaving voicemail messages for him regarding his failure to appear.

Mr. Morgan failed to appear at the August 10, 2020, show-cause hearing. (Minutes, ECF No. 45).  The Court then issued another show-cause order, requiring Mr. Morgan to personally appear on August 18, 2020, to explain his repeated failures to appear.  (ECF No. 46).  That order noted that Mr. Morgan's failure to appear may result in a warrant for his arrest.  (*Id.* at PageID.669).

Mr. Morgan appeared for the August 18, 2020, show-cause hearing.[8]  (Minutes, ECF No. 49).  At that hearing, he apologized to the Court and to Plaintiff's counsel. Mr. Morgan advised the Court that he was unaware of the two previous hearings because the Court's electronic notices were being forwarded to some email "folder" unbeknownst to him.[9]  The undersigned notes, however, that, on July 17, 2020 – four

---

[8] The audio recording of this hearing is available upon request.

[9] The email address to which the Court's electronic notices are sent are not selected by the Court, but instead are provided by the attorney in question.

8

days after the Court's notice of hearing and ten days before the hearing – Mr. Morgan appears to have personally filed Defendants' responses to Plaintiff's discovery requests.  (ECF No. 41).  That suggests that he had access to the docket on that date.

Mr. Morgan further advised the Court that he had been unaware of the Court staff's voicemail messages due to some technical problem with his phone.  Mr. Morgan assured the Court that the problems regarding his email and voicemail had been resolved.  The Court accepted Mr. Morgan's explanations, as well as his apology.

During the August 18 hearing, the Court addressed other pending matters in an effort to move this case forward.  First, it addressed Plaintiff's motion to compel Defendants' initial disclosures.  (ECF No. 37).  After Mr. Morgan conceded that Defendants had no valid basis for failing to produce the initial disclosures required by the Case Management Order, the Court granted the motion to compel.  Second, the Court addressed Plaintiff's second application for default.  (ECF No. 34).  Mr. Morgan's only explanation for the untimely filing of the answer to the amended complaint, after filing an untimely answer to the original complaint, was "the press of other business."  Although noting that the press of business does not constitute good cause for the late filing, the Court – giving Defendants the benefit of the doubt – set aside the second application for default.  Third, the Court granted Plaintiff's motion to extend the deadline for producing expert reports (ECF No. 47), which was necessitated by Defendants' failure to timely provide discovery and Mr. Morgan's failure to appear for court hearings (*see* ECF No. 47, PageID.670-71).

The Court also addressed the requirement of awarding costs under Rule 37(a)(5)(A).  Mr. Morgan conceded that the award of costs was appropriate, and he requested that Plaintiff's council provide him with a draft petition for costs with the goal of reaching a stipulation and thereby saving the Court's time in addressing it.  The Court acceded to this request and directed Plaintiff's council to consult with Mr. Morgan before filing the petition.  Unfortunately, Mr. Morgan failed to provide any meaningful response to Plaintiff counsel's several attempts to consult with him regarding the petition.  (*See* ECF No. 52).  Accordingly, Plaintiff filed its petition for costs on September 1, 2020 (ECF No. 51), the deadline set by the Court (*see* ECF No. 50, PageID.677).  Mr. Morgan failed to file a response to the petition.  On October 27, 2020, after waiting until the deadline for responding had passed, the Court granted the petition in part, awarding costs against Mr. Morgan, personally, in the amount of $6,915.00.[10]  (ECF No. 50, 57).  Mr. Morgan was given thirty days to pay.  (ECF No. 57).

During the August 18 hearing, the Court advised Mr. Morgan that it takes seriously its deadlines and orders, and it warned that future failures to comply "very well may result in sanctions."  That admonition was apparently lost on Mr. Morgan, as he violated the October 27 order by failing to make the payment of costs.

---

[10] The amount requested ($7,725.00) was reduced due to a discrepancy between counsel's affidavit and the firm's invoice, the Court using the lesser amount to give Mr. Morgan the benefit of the doubt.  (*See* ECF No. 57, PageID.862).

This, and Defendants' continued failure to complete their Rule 26(a)(1) disclosures, prompted Plaintiff to file a motion for a show-cause order on November 30, 2020. (ECF No. 58). Plaintiff pointed out that, in addition to failing to pay the costs as ordered, Mr. Morgan had merely produced a link to a four-page list of potential witnesses that also noted that documents relating to the case were stored at Defendant's headquarters. (*Id*. at PageID.870). Mr. Morgan failed to respond to Plaintiff counsel's efforts to confer (*see* ECF No. 59), and he failed to file a response to the motion. On December 30, 2020, the Court conducted a hearing on that matter, at which Mr. Morgan appeared. (Minutes, ECF No. 61).

During the December 30 hearing, Mr. Morgan acknowledged his failure to comply with the October 27 order awarding costs.[11] He asserted that he had been ill, but later noted: "The reason [the costs] [haven't] been paid is a communication breakdown in my office. My assistant is gone and I understood it had been forwarded and taken care of. It wasn't."[12] Mr. Morgan asked the Court to give him until January 8, 2021, to comply. The undersigned judicial officer noted that there had been a consistent failure on Defendants' part in responding to motions and in complying with Court orders. The undersigned again admonished Mr. Morgan that continued violations of its orders would not be tolerated.

---

[11] This hearing was conducted virtually through the use of Zoom. The audio/video recording of this hearing is available upon request.

[12] Given that the October 27 order made clear that Mr. Morgan was "personally responsible for paying the award of costs" (ECF No. 57, PageID.867), there is no reason for any confusion about whether the costs had been paid.

With respect to the initial disclosures, Mr. Morgan asserted that he had complied with the provisions of Rule 26(a)(1)(A)(ii) because he had provided Plaintiff with a description and location of documents in Defendants' possession that may be used to support their defenses.   Plaintiff's counsel pointed out, however, that Defendants had agreed to produce, by June 1, 2020, "[a]ll non-privileged documents related to the Osceola County Circuit Court case, No. 16-14662-CK, including discovery materials; all of Defendants' sales and financial reports related to the manufacturing, production, distribution, and sale of reusable canning lids from 2014 to the present."  (Joint Status Report, ECF No. 26, PageID.444).

Immediately after the December 30 hearing, the Court issued an order directing Defendants to "produce all documents subject to the voluntary production provision of the Joint Status Report" by January 6, 2021, and directing Mr. Morgan to "fully comply" with the October 27 order by January 8.  (ECF No. 62).  The Court also advised of its intent to award costs in favor of Plaintiff, directing Plaintiff's counsel to file a petition for costs relating to the December 30 hearing.  (*Id.* at PageID.877).  The Court again admonished Mr. Morgan **"that future failure to timely comply with the Court's orders may result in additional sanctions, including contempt."**  (*Ibid.*) (emphasis in original).

12

Plaintiff timely filed the petition for costs relating to the successful show-cause motion, seeking $3,037.50.  (ECF No. 63).  Mr. Morgan did not respond to the petition. On January 4, 2021, the Court granted, in part, Plaintiff's motion for summary judgment.  (Mem. Op., ECF No. 64; Order, ECF No. 65).  That motion had been filed on September 30, 2020 (*see* ECF No. 54), but Defendants failed to respond.  The Court also issued a new Case Management Order, setting an April 12, 2021, trial date. (ECF No. 66).

On January 8, 2020, Plaintiff filed another motion to extend the dates in the Case Management Order by sixty days, citing, in part, Defendants' failure to timely produce initial disclosures and their non-compliance with Court orders.  (ECF No. 69).  Mr. Morgan concurred in the relief requested.  (*See* ECF No. 70).  As a result, on January 11, 2021, the Court issued the Third Amended Case Management Order. (ECF No. 73).  That order set an April 16, 2021, settlement conference and a June 21, 2021, trial date.  (*Id.* at PageID.923).  The undersigned has advised the parties that the Court has no intention of granting further extensions.

On January 15, 2021, Plaintiff filed a motion for an order requiring Defendants to deliver all materials that infringe Plaintiff's intellectual property rights.  (ECF No. 74).  Plaintiff's counsel consulted with Mr. Morgan prior to filing the motion, but they were unable to reach a resolution.  (*See* ECF No. 75).  Mr. Morgan failed to file a response to the motion, however; so, on February 2, 2021 – after the time for responding had expired – the Court scheduled a hearing for February 11, 2021. (Notice, ECF No. 83).  On February 10, 2021, the Court issued a second notice

13

regarding the February 11 hearing, adding Plaintiff's petition for costs. (ECF No. 84). Mr. Morgan failed to appear for that hearing (Minutes, ECF No. 87), and he failed to contact the Court regarding his non-appearance. Accordingly, the Court issued a show-cause order requiring Mr. Morgan's appearance on February 17, 2021, to offer an explanation as to why he should not be held in contempt or otherwise sanctioned for his failure to appear.[13] (ECF No. 90). The Court noted that Mr. Morgan's failure to appear "**may result in the issuance of an arrest warrant**." (*Id.* at PageID.992) (emphasis in original). Undeterred by that admonition, Mr. Morgan failed to appear at the February 17 show-cause hearing. (Minutes, ECF No. 93).

On February 16, the day before the show-cause hearing, Mr. Morgan filed a motion seeking a protective order suspending for one hour (from 11:00 a.m. to 12:00 p.m.) the deposition of Defendant Norman Rautiola that was taking place that day, so that Mr. Morgan could attend a continued case evaluation in state court. (ECF No. 91).[14] Plaintiff filed a response the next day, contending that the motion was both "moot and nonsensical," and noting that "Defendants, and their counsel, prefer to play by their own rules. . . ." (ECF No. 92, PageID.997). Plaintiff pointed out that, on February 2, it had served Defendants with a subpoena scheduling Mr. Rautiola's

---

[13] Mr. Morgan acknowledged receipt of the February 11 show-cause order through an email notifying the undersigned's staff of a conflict with the hearing date. Although Mr. Morgan was advised by return email that he would need to file a motion to seek an adjournment of the hearing, no such undertaking was filed.

[14] The docket indicates that the motion was filed at 11:03 a.m. on February 16, 2021 (*see* ECF No. 91 (Html receipt)).

deposition for 9:00 a.m. on February 16 (a copy of the subpoena was filed at ECF No. 92-1). Plaintiff's counsel sent Mr. Morgan an email reminder on February 12 (ECF No. 92-2, PageID.1010), to which Mr. Morgan responded later that day raising for the first time a conflict he claimed to have with the 9:00 a.m. start, and seeking a later start.[15] (*Id.* at PageID.1009-10). Counsel eventually agreed to a 10:30 a.m. start. (*Id.* at PageID.1007-08). Mr. Rautiola's deposition began at 10:30 a.m., but Mr. Morgan left at 11:03 a.m. (filing his motion for a protective order at that time), and returning later that day to complete the deposition. (ECF No. 92, PageID.998).

After Mr. Morgan failed to appear at the February 17 show-cause hearing, the undersigned judicial officer issued a Report and Recommendation, recommending that Mr. Morgan be held in contempt of Court. (ECF No. 94). That February 18 Report and Recommendation advised Mr. Morgan that he had fourteen days in which to file objections, noting that "[f]ailure to file objections within the specified time waives the right to appeal the District Court's order." (*Id.* at PageID.1024). Mr. Morgan filed nothing. On March 5, 2021, the Honorable Hala Y. Jarbou adopted the Report and Recommendation and found Mr. Morgan in contempt, sanctioning him in the amount of $3,000.00. (Order, ECF No. 109). Judge Jarbou ordered that payment be made to the Clerk of the Court within thirty days. (*Id.* at PageID.1087). Mr. Morgan violated that order by failing to make the payment by the deadline.

---

[15] Mr. Morgan noted that he utilizes an "Outlook rule" that ensures that he sees emails from designated senders. (ECF No. 92-2, PageID.1009). Presumably, that "rule" would allow Mr. Morgan to ensure he sees the Court's ECF notices.

Moreover, he failed to seek an extension of time for making the payment.   Also on February 18, the undersigned issued an order (ECF No. 95) granting Plaintiff's motion to expedite (ECF No. 88) its motion to compel discovery (ECF No. 85).   The order also directed Defendants to file a response to the motion to compel by 2:00 p.m. on February 22, and Defendant Rautiola to appear in person for a February 23 omnibus hearing.   (ECF No. 95, PageID.1026).   Defendants filed their response late (ECF No. 97 (at 5:40 p.m.)), along with a motion to extend the deadline (ECF No. 98), which was granted (ECF No. 99).

On February 23, 2021, the Court conducted a hearing on Plaintiff's January 4 petition for costs (ECF No. 63), Plaintiff's January 15 motion for delivery of infringing materials (ECF No. 74), Plaintiff's February 10 motion to compel discovery (ECF No. 85), and Defendants' February 16 motion for protective order (ECF No. 91).   (*See* Minutes, ECF No. 101).   Counsel for all parties appeared, along with Mr. Rautiola.

Mr. Morgan advised the Court at the outset of the hearing that Defendants did not oppose Plaintiff's petition for costs (ECF No. 63) or Plaintiff's motion for delivery of infringing materials (ECF No. 74).   The Court raised the issue of whether the amount of costs Plaintiff sought ($3,037.50) was accurate in light of the fact that the invoice reflected a total cost of $2,625.00.   Mr. Morgan acknowledged that he had not reviewed the invoice, and accordingly, had no opinion on the accuracy of the petition, but was prepared to pay whatever the Court ordered.   Notwithstanding the fact that Defendants – and Mr. Morgan personally – had waived any issue in the petition by failing to file a response, the Court awarded the lesser amount.   The Court granted

Mr. Morgan's request for thirty days in which to pay.  Mr. Morgan was ordered to pay the costs "from his personal funds without reimbursement by his clients."  (ECF No. 102, PageID.1065).

As the Court addressed the details of a proposed order regarding the delivery of infringing materials, Mr. Morgan raised several objections.  Most of these objections were deemed waived by the failure to file a response to the motion.  The Court granted the motion, but required Plaintiff's counsel to consult with Mr. Morgan on the language of a revised order.  (*See ibid.*).  Counsel could not come to agreement on that language, so the Court resolved the remaining issues during a status conference on March 1, 2021.  (Minutes, ECF No. 106; Orders, ECF No. 107, 108).

In the February 23 hearing, the Court noted that it was dismissing without prejudice Plaintiff's motion to compel discovery (ECF No. 85) because Plaintiff failed to provide either a verbatim account of the discovery requests or a copy of the requests with the motion, as required by the local rules.  *See* W.D. MICH. LCIVR 7.1(b).  The Court also noted, however, the patent inadequacy of Defendants' response to the motion, and inquired as to when Defendants would be producing the discovery requested.  Mr. Morgan advised the Court that he would provide the discovery responses approximately seven days after the hearing.  The Court dismissed Defendants' motion for a protective order as moot.

On March 9, 2021, Plaintiff filed another motion to compel discovery (ECF No. 110), with expedited consideration requested, raising issues left unaddressed from its February 10 motion to compel (ECF No. 85).  The motion noted that, while

17

some documents had been produced, the production was patently incomplete and Defendants had still not answered the interrogatories nor provided a formal response to the document requests.  (ECF No. 110, PageID.1089-91).  Mr. Morgan failed to provide a substantive response to Plaintiff counsel's attempts to confer.  (*See* ECF No. 111).  On March 10, the Court scheduled a hearing on the motion for March 18, and ordered Defendants to file a response by March 17, noting that the failure to timely file a response may result in a summary disposition of the motion without hearing.  (Notice, ECF No. 112).

Mr. Morgan did timely file a response to the motion.  (ECF No. 113).  In his response, Mr. Morgan essentially asserted that Defendants had complied with their discovery obligations, and he provided the Court with undated copies of Defendants' responses to Plaintiff's interrogatories and document requests.  (*See* ECF No. 113, PageID.1114-18; *see also* ECF No. 113-1 (interrogatory responses), 113-7 (response to document requests)).  During a March 18, 2021, hearing on the motion, Mr. Morgan conceded, in response to a question from the Court, that the discovery responses were not served until March 16, two days before the hearing.[16]  A number of issues were addressed in the hearing, and the Court directed counsel to meet at Plaintiff counsel's office to work out the remaining issues with a status conference to follow, if necessary.  (Minutes, ECF No. 116).  The parties resolved the remaining issues, and the Court granted Plaintiff's motion to withdraw its discovery motion.  (*See* ECF No. 119, 121).

---

[16] The audio recording of that hearing is available upon request.

During the March 18 hearing, the Court noted that, because the discovery responses had been provided after the motion to compel had been filed, Defendants would be required to pay the costs of bringing the motion, absent a finding that their conduct in that regard was substantially justified or some other circumstance making an award of costs unjust.  *See* Fed. R. Civ. P. 37(a)(5)(A)(ii), (iii).  This issue was left unresolved as a result of Plaintiff's withdrawal of the motion to compel.

On March 30, 2021, Plaintiff filed a second motion for an order to show cause, this time relating to Mr. Morgan's failure to comply with the Court's February 23, 2021, order awarding $2,625.00 in costs.  (ECF No. 123).  Despite Plaintiff counsel's efforts to confer prior to the filing of the motion, Mr. Morgan was not forthcoming with the payment.  (*See* ECF No. 124).  On that same date, the Court noticed a hearing for April 2.  (ECF No. 125).  Mr. Morgan failed to appear at the April 2 hearing (Minutes, ECF No. 126), and he failed to contact the Court regarding his nonappearance – this was the fifth time he has failed to appear in Court as ordered. The Court issued a show-cause order requiring his appearance on April 6 to explain why he should not be held in contempt or otherwise sanctioned.  (ECF No. 127).

Mr. Morgan appeared for the April 6 hearing.[17]  He claimed that he had not seen the March 30 ECF Notice regarding the April 2 hearing because he had been involved in an arbitration all day and was too tired at the end of the day to check his emails.  The undersigned notes, however, that, the Court admonished Mr. Morgan

---

[17] The audio recording of this hearing is available upon request.

during the April 6 hearing for using his cell phone.  Mr. Morgan responded by stating that he was "not using it as a phone," but rather, that he was "looking at documents that were filed."  Mr. Morgan's claim that he failed to check his emails during any period of time on March 30 after 2:19 p.m., when the hearing notice was filed (*see* ECF No. 125 (html receipt)), is implausible.

Mr. Morgan claimed that he received a Covid vaccination on March 31, and that he was too sick in the days between that date and the April 2 hearing to view his email notices.  While it is plausible that Mr. Morgan had a negative reaction to the vaccination, that he was so indisposed as to be unable to view emails on his cell phone for three days is not.  The Court would certainly expect that, had that been the case, Mr. Morgan would have come to the show-cause hearing prepared to offer evidence of this illness, particularly given his poor track record regarding court appearances.

At any rate, Mr. Morgan's failure to check ECF filings falls well short of the Court's expectations of counsel.  Attorneys cannot simply avoid the consequence of an electronic filing by claiming an inability to view emails.

When asked why he had not paid the $3,000.00 civil contempt sanction imposed by the Court, which was due April 5,[18] Mr. Morgan claimed that he had attempted, unsuccessfully, on Saturday, April 3, to make the payment using the site "pay.gov."  He also stated that he called the Clerk's Office to seek assistance.  The

---

[18] The thirty-day deadline for paying this sanction ran on April 4.  Because that day was a Sunday, the deadline was automatically extended to April 5.  *See* FED. R. CIV. P. 6(a)(1)(C).

undersigned has reviewed the pay.gov site.  It would be readily apparent to any intelligent person – attorney or lay person – that the site provides no mechanism for paying a civil contempt sanction.  The only portal on pay.gov that arguably relates to the payment of fines to a district court is that labelled "United States District Courts Criminal Debts," which plainly states that it is limited to making "criminal debt payments."  *See* https://pay.gov/public/form/start/61006610 (last viewed April 13, 2021).  It is not reasonable to believe that Mr. Morgan, an attorney who has been in practice nearly forty years,[19] would believe that he could use this site to pay a civil contempt sanction.  The fact that he waited until nearly 10:00 a.m. on April 6 – the day after the deadline for payment and ninety minutes before the show-cause hearing began – to attempt contact with the Clerk's Office is telling.

When asked why he still had not paid the award of costs ordered on February 23, and which had been due March 25, Mr. Morgan stated that he had not yet received the funds from his client.  Confronted by the fact that the February 23 order required payment "from his personal funds without reimbursement by his clients" (ECF No. 102, PageID.1065), Mr. Morgan responded by simply by stating that "[he] didn't take that into account."[20]

_____

[19] *See* www.kbmpc.com/attorney/kenneth-b-morgan (last viewed April 13, 2021).

[20] On April 12, 2021, Mr. Morgan filed affidavits (ECF No. 130, 131), pursuant to the Court's order of April 6 (ECF No. 129), in which he attests to having paid to the Clerk of the Court the $3,000.00 civil contempt sanction, as well as the two awards of costs in favor of Plaintiff without reimbursement from any client.  (ECF No. 130, PageID.1487; ECF No. 131, PageID.1488).

21

The undersigned asked Mr. Morgan why he had not responded to Plaintiff's first motion for summary judgment, which had been filed September 30, 2020.[21]  Mr. Morgan responded that his "best answer, the accurate answer" was that he was "engaged and overwhelmed by other matters."  He also stated, however, that "aspects" of that motion would have been granted, even if he had presented the best arguments he could muster on behalf of Defendants.

## Discussion

### I.  Civil Contempt

It is settled law that federal courts have the inherent authority to punish those who violate court orders.  *See, e.g., Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 831 (1994).  "Courts independently must be vested with 'power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates, and . . . to preserve themselves and their officers from the approach and insults of pollution.' "  *Id.* (quoting *Anderson v. Dunn*, 6 Wheat. 204, 227, 5 L. Ed. 242 (1821)).  The Supreme Court described the nature and necessity of the contempt power in *Gompers v. Buck's Stove & Range Co.*:

> [W]hile it is sparingly to be used, yet the power of courts to punish for contempts is a necessary and integral part of the independence of the judiciary, and is absolutely essential to the performance of the duties imposed on them by law.  Without it they are mere boards of arbitration, whose judgments and decrees would be only advisory.
>
> If a party can make himself a judge of the validity of orders which have been issued, and by his own act of disobedience set them aside, then are

---

[21] This was the deadline set by the Court for filing dispositive motions.  (*See* Initial Case Management Order, ECF No. 28, PageID.449).

the courts impotent, and what the Constitution now fittingly calls the 'judicial power of the United States' would be a mere mockery.

221 U.S. 418, 450 (1911).

Criminal contempt is governed by 18 U.S.C. § 401.[22]  It provides, in pertinent part, that federal courts "shall have power to punish by fines or imprisonment, or both, at its discretion, such contempt of its authority, and none other, as . . . [d]isobedience or resistance to its lawful writ, process, order, rule, decree, or command."  *Id.*  Civil contempt, however, remains a creature of the court's inherent power.  *See Spallone v. United States*, 493 U.S. 265, 276 (1990) ("[T]he District Court [is] entitled to rely on the axiom that 'courts have inherent power to enforce compliance with their lawful orders through civil contempt.' " (quoting *Shillitani v. United States*, 384 U.S. 364, 370 (1966)).  "Contempts are neither wholly civil nor altogether criminal.  And 'it may not always be easy to classify a particular act as belonging to either one of these two classes.  It may partake of the characteristics of both.' "  *Gompers*, 221 U.S. at 441 (quoting *Bessette v. W.B. Conkey Co.*, 194 U.S. 324, 329 (1904)).

The principle purpose of criminal contempt is punitive, "to vindicate the authority of the court."  *Gompers*, 221 U.S. at 441.  Civil contempt, on the other hand, is remedial and is imposed "for the benefit of the complainant."  *Id.*; *see also United*

---

[22] If the Court pursues criminal contempt, it must appoint a prosecutor and afford the accused a jury trial.  *See* FED. R. CRIM. P. 42(a); *see also Bloom v. State of Illinois*, 391 U.S. 194, 210 (1968) (holding that those charged with criminal contempt have a right to a jury trial, unless it is being pursued as a "petty" offense (one punishable by incarceration of six months or less)).

*States v. United Mine Workers of Am.*, 330 U.S. 258, 303-04 (1947) (The purpose of civil contempt is "to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained." (citing *Gompers*, 221 U.S. at 448, 449)). "[A] contempt is considered civil when the punishment is wholly remedial, serves only the purposes of the complainant, and is not intended as a deterrent to offenses against the public." *McCrone v. United States*, 307 U.S. 61, 64 (1939). In addition, "[t]he award of attorney's fees and expenses to a successful movant may be appropriate in a civil contempt proceeding." *TWM Mfg. Co. v. Dura Corp.*, 722 F.2d 1261, 1273 (6th Cir. 1983).

Given the facts and circumstances of this case, Mr. Morgan's contumacious conduct falls squarely within the scope of criminal contempt. Nevertheless, the undersigned recommends that the Court utilize the procedures under civil contempt, keeping in mind that this would be Mr. Morgan's second contempt citation in this case.

The undersigned believes that civil contempt, with a significant sanction, may be sufficient to effectively remediate the harm caused by his continued misconduct, vindicate the Court's orders, and provide the necessary incentive to obtain his future compliance with the Court's orders. The standards for civil contempt require a showing "by clear and convincing evidence that [the alleged contemnor] 'violated a definite and specific order of the court requiring [him] to perform . . . a particular act or acts with knowledge of the court's order.'" *Rolex Watch U.S.A., Inc. v. Crowley*, 74 F.3d 716, 720 (6th Cir. 1996) (quoting *N.L.R.B. v. Cincinnati Bronze, Inc.*, 829 F.2d

24

585, 590 (6th Cir. 1987)).  Based on the certified facts contained herein, the standard for civil contempt has been met.

## II.    Default Judgment

There are a number of sanctions available to the Court for violations of its orders.  *See, e.g., Bank One of Cleveland, N.A. v. Abbe*, 916 F.2d 1067, 1073 (6th Cir. 1990).  Rule 16 provides, in pertinent part, that the Court may, on  its own, "issue any just orders, including those authorized by Rule 37(b)(2)(ii)-(vii), if a party or its attorney . . . fails to obey a scheduling or other pretrial order."  FED. R. CIV. P. 16(f)(1)(C).  Rule 37 sanctions include a contempt sanctions, *see* FED. R. CIV. P. 37(b)(2)(A)(vii, as recommended above.  Those sanctions also include "rendering a default judgment against a disobedient party."  FED. R. CIV. P. 37(b)(2)(A)(vi).

Default judgment is a sanction of last resort.  *Abbe*, 916 F.2d at 1073 (citing *Regional Refuse Sys. v. Inland Reclamation Co.*, 842 F.2d 150, 153-54 (6th Cir. 1988)).  The Sixth Circuit has recently reiterated the four factors to consider in determining whether to impose a case-terminating sanction:  (1) "whether the disobedient party acted in willful bad faith"; (2) "whether the opposing party suffered prejudice"; (3) "whether less drastic sanctions were imposed or considered"; and (4) "whether the court warned the disobedient party that failure to cooperate could result in a default judgment."  *KCI USA, Inc. v. Healthcare Essentials, Inc.*, 801 Fed. App'x 928, 934 (6th Cir. 2020); *see Abbe*, 916 F.2d at 1079 (same).  Default judgments are reviewable only for abuse of discretion.  *See KCI USA*, 801 Fed. App'x at 934;  *Regional Refuse Sys.*, 842 F.2d at 154 (citations omitted).

25

The undersigned recommends that the Court impose the sanction of default judgment.  The first three factors strongly militate in favor of rendering a default judgment in this case, and there have been sufficient warnings of potential additional sanctions to satisfy the intent and purpose of the fourth factor.

A.     There is Evidence of Willful Bad Faith

There is clear and convincing evidence of willful bad faith on the part of Defendants and their counsel, Mr. Morgan.  It must be noted at the outset of this analysis that the parties have made no secret of the fact that there is bad blood between them.  They have been involved in previous protracted litigation in this Court and in the Osceola Circuit Court.

As evident from a review of the certified facts outlined above, Defendants conduct in this case leads to the unavoidable conclusion that they have engaged in a strategic, concerted plan to obfuscate and delay the proceedings.  The record also indicates that this conduct may be motivated by the fact that Defendants have few, if any, viable defenses to most of the claims raised in Plaintiff's complaint, and they have continued to profit from the sale of infringing product.  Defendants failed to respond in any way to Plaintiff's first motion for summary judgment, which was granted in large part after careful review by this Court.  Mr. Morgan's explanation for that failure rings hollow, and his concession that "aspects" of the motion would have been granted anyway speaks volumes.

26

Throughout the discovery process in this case, Defendants have failed to timely meet their discovery obligations.  After agreeing to produce certain initial disclosures by June 1, 2020, they failed to produce that material until January of this year, and only then after considerable litigation and repeated orders to produce.  (*see* ECF No. 50, 62).  Moreover, throughout that litigation, Defendants have never offered a valid objection or reason for withholding the documents and information they agreed to produce at the outset of this case.

Defendants, through counsel, have consistently failed to cooperate – or even respond – to Plaintiff counsels' efforts to confer on the discovery disputes and other potential motions.  With few exceptions, Defendants also failed to file a response to those motions, and then usually conceded the issues during the hearings that followed.  This conduct served no purpose but to cause significant, needless delay in the proceedings.

Defendants' Answer to the Complaint and to the Amended Complaint each was filed late, and then only after Plaintiff filed an application for default.  Moreover, both answers were largely unresponsive to the factual allegations in the complaints.  Of the 145 paragraphs in the answers, 117 contained the same non-responsive assertion of a lack of sufficient information to form a belief regarding the truth of the allegations.   These included responses to specific factual allegations regarding Defendant Norman Rautiola, with whom Defendants' counsel had ready access throughout this case, at least by telephone.  Defendants' efforts to blame the Covid-19 pandemic for being unable to obtain the information needed to provide a

27

substantive response to the complaint are incongruous.  Defendants' specious assertion of lack of knowledge regarding the previous cases they cited, and which pleadings were attached to their motion to dismiss, is evidence of willful bad faith.

Defendants' counsel, Mr. Morgan, has failed to appear for scheduled hearings no less than five times.  These failures to appear have required the scheduling and conduct of a number of show-cause hearings, resulting in significant additional, needless delay.  Moreover, Mr. Morgan's various excuses are not credible.  There is a reason other than those asserted for his contumacious conduct – that reason appears to be related to a concerted effort to delay and obfuscate.

B.     Plaintiff Has Suffered Prejudice

Plaintiff has unquestionably suffered prejudice by Defendants' contumacious conduct.  Plaintiff has a right to the "just, speedy, and inexpensive" adjudication of this case.  FED. R. CIV. P. 1.  The record demonstrates that the proceedings in this case have been anything but just, speedy, and inexpensive.  Defendants bear the primary responsibility for this.

This case has been pending some 28 months.  Defendants' dilatory tactics included repeated failures to respond to discovery requests, requiring the filing of meritful motions to compel; repeated failures (or refusals) to cooperate with the Rule 7.1(d) conferral process; and repeated failures to respond to motions, waiting until the hearing to concede the issues.  Defendants' counsel, Mr. Morgan, recently conceded that "aspects" of Plaintiff's first motion for summary judgment would have been granted, even if a proper response had been filed.  Yet, Defendants did and said

nothing at the time, leaving it to the Court to sort it out.  This demonstrates not only a deliberate, concerted effort to delay these proceedings, but also that Plaintiff has suffered prejudice.

Moreover, Defendants' conduct demonstrates an intent to obfuscate.  As noted above, the non-responsive answers to the factual allegations in the complaint necessarily hampers Plaintiff's ability to conduct discovery and to prepare for trial. Defendants' failure to cooperate in discovery exacerbates that harm.  Meanwhile, Mr. Morgan continues to assert, during hearings, that Defendants' affirmative defense of *res judicata* will ultimately prevent the Court from entering final judgment on the claims for which summary judgment has already been granted.   Mr. Morgan represented to the Court some time ago that the filing of Defendants' motion for summary judgment on that issue was imminent.  No such undertaking has been filed to date.

Defendants apparently continued to profit from these delays at Plaintiff's expense.   Until the Court granted Plaintiff's motion for delivery of infringing materials on March 4, 2021, Defendants presumably continued the manufacture and sale of infringing product.

C.    The Court Has Imposed Intermediate Sanctions

As outlined in the certified facts above, the Court has imposed a number of intermediate sanctions, both in the form of civil contempt to obtain Mr. Morgan's compliance with Court orders, and in the award of costs under Rule 37(a)(5)(A) to encourage Defendants' compliance with their discovery obligations.  To date, some

$13,000.00 in sanctions has been imposed.  Unfortunately, these sanctions have not had their desired effect.

D.     The Court Warned Defendants of Additional Sanctions

The undersigned is unaware of any specific warning to Defendants that their continued contumacious conduct may result in a default judgment.  Defendants have, however, been warned a number of times of the potential for additional sanctions. Even the prospect of an arrest warrant had no apparent effect on Mr. Morgan's conduct.  It is hard to imagine that a specific warning regarding default judgment would have been any more effective.

## Conclusion

Having found repeated violations of this Court's orders, the undersigned judicial officer recommends that Mr. Morgan be held in contempt of court under Rule 37(b)(2)(A)(vii).   The undersigned recommends that the Court impose a monetary sanction in the amount of $20,000.00.  In reaching this proposed figure, the undersigned has considered not only the seriousness and pervasiveness of Mr. Morgan's contumacious conduct, but also the fact that the nearly $13,000.00 in sanctions to date have had no apparent effect.

In addition, and for the reasons stated herein, the undersigned judicial officer recommends that the Court render a default judgment against Defendants under Rule 37(b)(2)(A)(vi).

Moreover, Rule 37 provides that, "[i]nstead of or in addition to" the sanctions recommended above, "the court *must* order the disobedient party, the attorney

30

advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C) (emphasis supplied). Accordingly, the undersigned recommends that the Court award Plaintiff's costs, pursuant to Rule 37(b)(2)(C), relating to the following matters, which have not yet been subject to any award of costs:

    (1)    the February 17, 2021, show cause hearing in which Mr. Morgan failed to appear (Minutes, ECF No. 93);

    (2)    Plaintiff's March 9, 2021, motion to compel discovery (ECF No. 110) and the March 18, 2021, hearing on that motion (Minutes, ECF No. 116);

    (3)    Plaintiff's March 30, 2021, motion for a show-cause order (ECF No. 123), and the April 2 hearing on that motion in which Mr. Morgan failed to appear (Minutes, ECF No. 126);

    (4)    the April 6, 2021, show-cause hearing (Minutes, ECF No. 128); and

    (5)    the April 30, 2021, show-cause hearing scheduled before the Honorable Hala Y. Jarbou.

It is further recommended that the Court refer the determination of the amount of the Rule 37(b)(2)(C) costs to the undersigned.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of the date of service of this notice.  28 U.S.C. § 636(b)(1)(C).  Failure to file objections within the specified time waives the right to appeal the District Court's order.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

Date: April 15, 2021

/s/ Phillip J. Green
PHILLIP J. GREEN
United States Magistrate Judge