UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

S&S INNOVATIONS CORP.,
A Colorado Corporation,

      Plaintiff,

v.

UUSI, LLC, d/b/a Nartron, a Michigan
Limited Liability Company, TATTLER
HOME PRODUCTS, LLC, a Michigan
Limited Liability Company, and NORMAN
RAUTIOLA, an individual.

      Defendants.

Case No. 18-cv-01377

Honorable Hala Y. Jarbou

Magistrate Phillip J. Green

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

**EXPEDITED CONSIDERATION REQUESTED**

**ORAL ARGUMENT REQUESTED**

---

**PLAINTIFF'S BRIEF IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT RELATED TO TREBLE DAMAGES, DEFENDANTS' WILLFUL CONDUCT, STATUTORY DAMAGES, AND ATTORNEYS' FEES**

The Court already ruled that Defendants intentionally used Plaintiff's registered marks in association with their unlawful manufacturing and sale of reusable canning lids. The Court also ruled that Defendants engaged in this intentional conduct knowing that their use of Plaintiff's marks were counterfeits. [ECF No. 64]. Accordingly, Plaintiff is entitled to treble damages and attorneys' fees pursuant to 15 U.S.C. § 1117(b) at the time of trial.

Alternatively, Plaintiff is entitled to an enhancement of up to three times its actual damages because Defendants' infringement was willful and other equitable factors apply. An award of attorneys' fees should also be granted because this is an exceptional case pursuant to 15 U.S.C. § 1117(a).

Additionally, Defendants acted willfully in the course of engaging in counterfeit infringement pursuant to 15 U.S.C. § 1117(c)(2). As a result, Plaintiff is entitled to a substantial amount of statutory damages.

1

**STATEMENT OF FACTS**

On January 4, 2021, the Court granted in part Plaintiff's Motion for Summary Judgment. [ECF No. 64].  The Court found that Defendants Uusi, LLC d/b/a Nartron ("Nartron") and Tattler Home Products, LLC are liable for trademark infringement.  [ECF No. 64, PageID. 899].  The Court stated, "Plaintiff has presented evidence sufficient to demonstrate that there is no genuine dispute of material fact regarding THP's unpermitted use of the Tattler logo and the harm it inflicts on S&S through potential customer confusion.  It is undisputed that Nartron manufactured the infringing products for THP.  This makes Nartron liable as a contributory infringer…THP and Nartron have infringed on S&S's trademark and Plaintiff is entitled to judgment as a matter of law on Count I."  *Id*.

Importantly, in the process of finding Nartron and THP liable for trademark infringement, the Court found that Defendants intentionally used Plaintiff's registered marks in the course of their infringement: "Defendants knew that the Tattler logo was protected and belonged to S&S…It lacked authority to permit THP's use of S&S's intellectual property.  THP has continued to use the Tattler logo even after it was determined that Stieg, not Nartron, controlled S&S. **Defendants knowingly used a protected mark that they had no right to use**. This factor favors Plaintiff." [ECF No. 64, PageID. 898].  (Emphasis Added).

The Court also held that Nartron and THP are liable for federal trademark counterfeiting. [ECF No. 64, PageID. 900].  "**Plaintiff further established that THP and Nartron knew the Tattler logo was registered to S&S yet continued to use the logo on THP products**.  THP's Tattler logo is a counterfeit of a registered trademark.  Because S&S has met both elements of the claim, the Court will grant summary judgment in favor of Plaintiff on Count II against THP and Nartron." [ECF No. 64, PageID. 900].  (Emphasis Added).

With respect to unfair competition, the Court held Nartron and THP liable.  [ECF No. 64, PageID. 902].  "THP sells infringing Tattler products, and Nartron manufactures them.  Both companies are liable.  Plaintiff is entitled to summary judgment on Count III against Nartron and THP."  (Internal Citations Omitted).  *Id*.

Finally, the Court held that THP was liable for copyright infringement.  [ECF No. 64, PageID. 905].  "There is no genuine dispute that S&S owns a copyright to its website, and that THP's website uses that copyrighted material on its own site.  Plaintiff is entitled to summary judgment against THP on Count V."  *Id*.

These findings and rulings are dispositive to Defendants' liability for treble damages and attorneys' fees pursuant to 15 U.S.C § 1117(a) and (b).  These findings, along with all other facts related to this matter, form the basis for finding Defendants' conduct was willful and that Plaintiff is entitled to the maximum amount of statutory damages.

## FED. R. CIV. P. 56 STANDARD

Summary judgment is appropriate only when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 251-52 (1986).

## LAW AND ARGUMENT

I.      **PLAINTIFF IS ENTITLED TO TREBLE DAMAGES UNDER 15 U.S.C. § 1117(b)(1) BASED ON DEFENDANTS' INTENTIONAL INFRINGEMENT AND USE OF A COUNTERFEIT MARK.**

In the event a defendant is found liable for counterfeit infringement, the Lanham Act not just permits – but requires – Courts to impose treble damages upon a finding of intentional use of a counterfeit mark.  15 U.S.C. § 1117(b)(1).  When awarding damages for trademark infringement

3

under § 1114 involving use of a counterfeit mark, courts must award treble damages where a defendant (1) intentionally uses a mark or designation, (2) knowing that the mark or designation used is a counterfeit mark under 15 U.S.C. § 1116(d), (3) in the sale, offer, or distribution of goods or services.  See, 15 U.S.C. § 1117(b)(1); 15 U.S.C. § 1114(1)(a).

The U.S. Supreme Court recently held that "[s]ection 1117(b) *requires* courts to treble profits or damages and award attorney's fees when a defendant engages in certain acts *intentionally* and with specified *knowledge*."  *Romag Fasteners, Inc. v. Fossil, Inc.*, __U.S.__; 140 S.Ct. 1492, 1495 (2020).  (Emphasis Added).

There are few or no cases before the Sixth Circuit Court of Appeals addressing the issue of trebling under § 1117(b).  However, other circuits have readily imposed such damages.  See, *Louis Vuitton S.A. v. Lee*, 875 F.2d 584, 588 (7th Cir. 1989) ("Section 1117(b) is a severe statute. The trebling of the plaintiff's damages or the defendant's profits--whichever is greater--is mandatory (as is the award of the plaintiff's attorney's fees), subject only to the statute's exception for 'extenuating circumstances,' which as we shall see is extremely narrow.").

Even though there are few or no cases related to the issue of trebled damages under 15 U.S.C. § 1117(b) before the Sixth Circuit Court of Appeals, district courts in the Sixth Circuit have regularly imposed trebled damages for cases of counterfeit infringement under § 1117(b).  See, *Chanel, Inc v Huang Cong*, ___F Supp 2d___; 2011 U.S. Dist. LEXIS 141177, at *32-33 (W.D. Tenn., Dec. 8, 2011) (Defendant intentionally used the Chanel Marks for the purpose of capitalizing on Chanel's goodwill and reputation, and used these counterfeit marks in the sale, offer, and/or distribution of goods.  The Court awarded the plaintiff treble damages.); Gillette *Co. v. Save & Discount LLC*, 1:15-cv-636 (S.D. Ohio 2016) ("Accordingly, Plaintiff seeks trebling the damage amount pursuant to 35 U.S.C. § 284 and 15 U.S.C. § 1117(b). Given Defendant's willful

infringement, the Court finds that Plaintiff is entitled to recover three times its conservative estimate of damages, or $55,047.42."); *Ford Motor Co. v. Heritage Management Group, Inc.*, 911 F.Supp.2d 616, 630 (E.D. Tenn. 2012) ("Where, as here, a case involves a counterfeit mark, the Court shall enter judgment for three times the profits or damages, whichever is greater, and a reasonable attorney's fee if the use of the mark was intentional, the defendant knew the mark was counterfeit, and the defendant used the mark in connection with a sale, offering for sale, or distribution of goods or services. § 1117(b).")

        a. *Defendants intentionally used a counterfeit of Plaintiff's registered marks in course of their unlawful conduct.*

In this case, the Court should find that Plaintiff is entitled to treble damages.  This Court has already made the factual findings necessary for relief under 15 U.S.C. § 1117(b)(1). Specifically, on January 4, 2021, the Court ruled that Defendants "intentionally used Plaintiff's registered marks in the course of their infringement," and that "THP and Nartron knew the Tattler logo was registered to S&S yet continued to use the logo on THP products.  THP's Tattler logo is a counterfeit of a registered trademark."  [ECF No. 64, PageIDs. 898; 900].  These findings of fact trigger the award of treble damages that is required by the Lanham Act.

        b. *Defendants cannot escape trebled damages under 15 U.S.C. § 1117(b) due to any extenuating circumstances.*

15 U.S.C. § 1117(b) provides an exception to the rule of trebled damages for cases that involve "extenuating circumstances," although that exception is "extremely narrow."  *Louis Vuitton S.A.* 875 F.2d at 588.  The Sixth Circuit has not defined what constitutes "extenuating circumstances" under § 1117(b).  *Sprint Solutions, Inc v Lafayette*, ___F Supp 3d___; 2018 U.S. Dist. LEXIS 114262, at *4 (WD Tenn, July 10, 2018).

Courts outside this circuit have found that "[e]xtenuating circumstances will be present

only in 'a rare case,' such as in the case of 'an unsophisticated individual, operating on a small scale, for whom the imposition of treble damages would mean that he or she would be unable to support his or her family.'" *Tiffany & Co. v. Costco Wholesale Corp.*, 274 F.Supp.3d 216, 225 (S.D.N.Y. 2017), quoting *Koon Chun Hing Kee Soy & Sauce Factory, Ltd. v. Star Mark Mgmt., Inc.*, 628 F.Supp.2d 312, 325 (E.D.N.Y. 2009).

This case exhibits the polar opposite of "extenuating circumstances."  Rautiola is an extremely experienced business person who founded Nartron approximately 50 years ago and grew it into a very profitable business.  Likewise, although Defendant Tattler Home Products, LLC is essentially a shell corporation having no employees, it does own a bank account which received over $48 million in deposits from 2014-2021.  Lastly, Nartron has been a party to many lawsuits under Rautiola's leadership, and it is clear that Rautiola is aware that his actions have consequences.  Therefore, this case clearly does not involve any extenuating circumstances that would allow the Defendants to escape trebled damages under 15 U.S.C. § 1117(b).

Accordingly, the Court should treble any damages awarded under 15 U.S.C. § 1117(b).

## II.    PLAINTIFF IS ALSO ENTITLED TO TREBLE DAMAGES AND COSTS PURSUANT TO 15 U.S.C. § 1117(a).

Plaintiff is entitled to treble damages and costs under 15 U.S.C. § 1117(b).  However, in the event that the Court determines trebling is not proper under § 1117(b), then Plaintiff is entitled to treble damages under § 1117(a).

The Sixth Circuit has recognized that courts have great equitable powers in awarding damages.  In determining whether to impose treble damages under 15 U.S.C. § 1117(a), Courts have applied the following factors:  the defendant's intent to deceive; whether sales were diverted; the adequacy of other remedies; any unreasonable delay by the plaintiff in asserting its rights; the public interest in making the misconduct unprofitable; and "palming off," i.e., whether the

defendant used its infringement of the plaintiff's mark to sell its own products to the public through misrepresentation. *La Quinta Corp v Heartland Props LLC*, 603 F.3d 327, 343 (6th Cir. 2010).

"Moreover, enhancement could, consistent with the 'principles of equity' promoted in [§ 1117(a)], provide proper redress to an otherwise undercompensated plaintiff where imprecise damage calculations fail to do justice, particularly where the imprecision results from defendant's conduct." *Id*. (Internal Citations Omitted).  See also, *Gutter Topper, Ltd v Sigman & Sigman Gutters, Inc*, ___F Supp 3d___; 2015 U.S. Dist. LEXIS 44210, at *9 (S.D. Ohio, Apr. 3, 2015) ("The Court finds that trebling is appropriate here. The Court previously has determined that Sigman acted willfully and with intent to deceive, palmed off his own gutter product as the Gutter Topper product, and diverted sales, and that GTL did not delay in protecting its rights."); *KCI USA, Inc v Healthcare Essentials, Inc*, ___F Supp 3d___; 2018 U.S. Dist. LEXIS 153858, at *22 (N.D. Ohio, Sep. 10, 2018) ("Because the Ohio Defendants' trademark violation was willful, it diverted business away from Plaintiff, and provable damages are inadequate to compensate Plaintiff, the Court awards treble damages totaling $645,016,638.00 against those Defendants.").

Notwithstanding the findings of intentional trademark infringement, the factors set forth in *La Quinta* compel imposition of treble damages.  First, Defendants' intention to deceive not only Plaintiff, but also consumers, is well documented.  As identified above, there has already been a finding of fact that Defendants intentionally selected Plaintiff's registered marks, used the marks in the course of manufacturing and selling reusable lids, and engaged in using counterfeit marks. Additionally, Rautiola testified during his deposition that he selected the name "Tattler Home Products, LLC" because he knew that Plaintiff's Tattler-brand had goodwill and name recognition in the marketplace. *Exhibit A, p 57-58*.

7

Second, Defendants' conduct undeniably diverted sales from Plaintiff. After inducing Stieg to transport the entire S&S business from Colorado to Michigan, Rautiola ousted Stieg from the Nartron premises. This meant that Stieg was separated from his business, including client lists, equipment, and materials. Defendants used this as a means to unlawfully compete with Plaintiff.

Third, trebling damages is perhaps the only means of attempting to make Plaintiff whole. Defendants sabotaged Plaintiff's business, engaged in intentional and willful intellectual property violations, and created a competing business selling counterfeit lids. And when taken to task, Defendants only provided untrustworthy information related to their sales.

Fourth, Defendants have made no argument related to the timing of Plaintiff asserting its rights. And for good reason. Plaintiff initiated this lawsuit within months after being embroiled in a lawsuit with Rautiola in Osceola County Circuit Court for several years, a case that concluded with a jury trial. It cannot be argued that Plaintiff in any way delayed in bringing this lawsuit.

Fifth, the public has a strong interest in making Defendants' conduct unprofitable. Defendants stole Plaintiff's business and its intellectual property, and then used Plaintiff's assets and registered marks to directly compete against S&S. The public should never endorse this conduct. This is especially true when Stieg instructed Defendants to stop infringing just months after relocating the business from Colorado to Michigan, but Defendants carried on with their infringement nevertheless. *Exhibit B*.

Sixth, there has already been a finding of fact that Defendants engaged in "palming off." The Court previously held that Defendants used Plaintiff's marks in the course of unlawfully selling reusable canning lids.

Lastly, 15 U.S.C. § 1117(a) additionally provides for "costs of the action." Plaintiff has expended substantial costs in this action (exclusive of attorneys' fees). Most notably, Plaintiff has

retained an expert witness to calculate and opine on its lost profits.  It is not unusual for a case of this magnitude to require the services of an expert witness, but Plaintiff was left with no option but to retain the expert witness due to Defendants' failure to produce timely or credible documents of its sales.  Accordingly, Plaintiff's costs should also be awarded based on the *La Quinta* equitable factors discussed above.

For the above stated reasons, the *La Quinta* factors heavily weigh in favor of treble damages.  At each step, Defendants acted intentionally with respect to their infringement, knew their use of Plaintiff's intellectual property resulted in counterfeit marks, and used the counterfeit marks in the course of unlawfully selling lids.  This Court should find as a matter of law that Plaintiff is entitled to treble damages under 15 U.S.C. § 1117(a).

### III.   DEFENDANTS' WILLFUL CONDUCT WARRANTS AN ENHANCED STATUTORY DAMAGES AWARD UNDER § 1117(c)(2).

Upon a finding of willful conduct, this Court can award statutory damages of "not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just."  15 U.S.C. § 1117(c)(2).  The term "willful" is used throughout 15 U.S.C. § 1117 in the context of enhancing damages.  See, 15 U.S.C. § 1117(a) and 1117(c)(2).  The statute does not define the term "willful."  In *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57, (2007), the Supreme Court, when addressing the term "willful," held "where willfulness is a statutory condition of civil liability, we have generally taken it to cover not only knowing violations of a standard, but reckless ones as well."  Applying this definition to 15 U.S.C. § 1117(c), the Eastern District of Michigan held "that the willfulness standard for increasing damages under 15 U.S.C. § 1117(c) includes knowingly, intentional, or *reckless*."  *Lorillard Tobacco Co v Yazan's Serv Plaza, Inc*, ___F Supp 2d___; 2007 U.S. Dist. LEXIS 45612, at *16 (E.D. Mich., June 25, 2007).  In addition, the Sixth Circuit has held that knowing and intentional

behavior is willful, and in particular, the continued act of infringement after being put on notice of the infringement. *Coach, Inv. v. Goodfellow*, 717 F.3d 498 (6th Cir. 2013) (A flea market owner's conduct was held to be willful after he was sent multiple cease and desist letters, yet he failed to stop renting out space to vendors selling counterfeit goods.)

This application is consistent with how other circuits have defined "willful." The First Circuit held "in the civil context, willful conduct denotes intentional, knowing and voluntary acts. It may also indicate a reckless disregard for obvious or known risks." *Thomsen v. U.S.,* 887 F.2d 12, 17 (1st Cir. 1989). (Internal Citations Omitted). The Second Circuit held that "willful" in the context of the Lanham Act means the defendant "had knowledge that its actions constitute an infringement." *N.A.S. Import, Corp. v. Chenson Enters., Inc*., 968 F.2d 250, 252 (2nd Cir. 1992).

In this case, Defendants' infringing conduct was willful under 15 U.S.C. § 1117(c). This Court has effectively already ruled as much. On January 4, 2021, the Court stated on two occasions that Defendants intentionally infringed on Plaintiff's registered marks. [ECF No. 64, PageIDs. 898; 900]. Of course, an element of counterfeit infringement includes a finding of intentional conduct, which the Court already found that Defendants intentionally engaged in trademark infringement. Finding that Defendants' conduct was intentional amounts to willfulness, and at a minimum reckless disregard for infringement. See, *Safeco Ins. Co. of Am.*, 551 U.S. at 57; *Lorillard Tobacco Co*, ___F Supp 2d___at *16.

This finding is consistent with the facts of the case, especially where Stieg demanded that Defendants cease use of Plaintiff's registered marks in May 2014 and Defendants refused to do so. In addition, the Defendants did not stop making and selling counterfeit canning lids after this case was filed on December 13, 2018, or even after the Court held Defendants Nartron and Tattler Home Products, LLC liable for selling counterfeit goods on January 4, 2021. "A defendant's

10

continued infringement after notice of his wrongdoing is probative evidence of willfulness." *Chanel, Inc v Wrice*, ___F Supp 3d___; 2015 U.S. Dist. LEXIS 15337, at *18 (ND Ohio, Feb. 9, 2015), quoting, *Microsoft Corp v McGee*, 490 F Supp 2d 874, 880 (SD Ohio, 2007). See also, *Coach, Inv.*, 717 F.3d 498.  This Court should find as matter of law that Defendants acted willfully in their infringement.  And as a result, the upper limit for statutory damages under 15 U.S.C. § 1117(c)(2) should be raised to $2,000,000 per counterfeit mark per type of goods or services sold.

## IV.   PLAINTIFF IS ENTITLED TO STATUTORY DAMAGES PURSUANT TO 15 U.S.C. § 1117(c)(2).

Upon a finding of willful conduct, this Court can award statutory damages of "not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c)(2).  Like all other damages available under 15 U.S.C. § 1117, statutory damages can be trebled.  See, *Chanel, Inc v Song Xu*, ___F Supp 2d___; 2011 U.S. Dist. LEXIS 173648, at *27-28 (W.D. Tenn., Mar. 15, 2011).  Statutory damages are one form of damages in which Plaintiff may elect to pursue at the time of trial.

Section 1117(c) was added to the Lanham Act because a civil litigant may not have been able to recover "if a sophisticated, large-scale counterfeiter has hidden or destroyed information about his counterfeiting." *Coach, Inc v Chouman's Ass'n*, ___F Supp 3d___; 2012 U.S. Dist. LEXIS 181896, at *7-8 (ED Mich, Dec. 26, 2012).  (Internal Citation Omitted).  Thus, statutory damages filled a "gap" in the law, where proving actual damages is difficult due to an infringer's deceptive record-keeping activities.  *Id*., citing *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 110 (2d Cir. 2012).  The amounts set forth under the statute "are appropriate given the extent of damage done to business goodwill by infringement of trademarks." *Id.* (Internal Citation Omitted).  "A court has wide discretion in determining the amount of statutory damages to be

awarded, within the specified limits established by Congress." *Ford Motor Co v Cross*, 441 F

Supp 2d 837, 852 (E.D. Mich. 2006).

> Factors to consider when awarding statutory damages include:
>
> (1) the expenses saved and the profits reaped; (2) the revenues lost by the plaintiff; (3) the value of the [trademark]; (4) the deterrent effect on others besides the defendant; (5) whether the defendant's conduct was innocent or willful; (6) whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced; and (7) the potential for discouraging the defendant. *Allstar Mktg Group, LLC v Media Brands Co*, 775 F Supp 2d 613, 622 (S.D.N.Y. 2010).

Plaintiff now seeks the maximum amount of statutory damages based on Defendants'

intentional counterfeit use of Plaintiff's federally-registered marks (one for the name

"TATTLER," and one for the Tattler logo) in the course of its unlawful sale of reusable canning

lids. *Exhibit C*. As a baseline level of damages, Plaintiff requests an award of the statutory

maximum amount of $4,000,000 ($2,000,000 per mark) pursuant to 15 U.S.C. § 1117(c)(2). As

this Court is more than aware, Defendants' conduct beginning in 2014, and throughout this case,

has been intentional, willful, and much worse. An award of $4,000,000 is more than proper under

the circumstances.

> *a. Plaintiff incurred substantial expenses as a result of Defendants' willful infringement.*

Plaintiff's majority owner, Stieg, bore the cost to relocate the business from Colorado to

Michigan. He did so under the impression that he would have a cooperative, good-faith business

partner in Rautiola. Obviously, Rautiola did not have similar intentions. He induced Stieg to bring

the entire business to Reed City, Michigan, and then removed Stieg from the premises, thereby

requiring Stieg to invest heavily in equipment, materials, and supplies to salvage his business. This

factor weighs heavily in favor of awarding Plaintiff significant statutory damages.

    *b.  Plaintiff suffered significant lost profits as a result of Defendants' willful infringement.*

Once again, Plaintiff was left to its own devices to determine some measure of its damages. It retained an expert who conducted a thorough analysis of Plaintiff's lost profits.  *Exhibit D*.  Mr. Kevin McElroy determined Plaintiff's lost profits to be $2,103,295 from 2014 – December 2020.[1] This calculation is offered to illustrate part of Plaintiff's damages and is well within the Court's discretion when assigning statutory damages under 15 U.S.C. § 1117(c)(2).  This Court should exercise its broad discretion in awarding statutory damages based on the litany of misdeeds by Defendants and award $4,000,000 in statutory damages based not only on Plaintiff's lost profits, but also based on the totality of Defendants' unlawful conduct.

    *c.  Norman Rautiola admits that Plaintiff's trademarks have significant value.*

After obtaining access to S&S assets, Rautiola consciously selected the name "Tattler Home Products, LLC" to form his competing, and infringing, enterprise.  He chose the name Tattler Home Products, LLC because the "Tattler" name had brand recognition in the marketplace.

Q:  Why did you name the business Tattler Home Products?
A:  It describes what it is.
Q:  How?
A:  I, I think the name Tattler had some standing in the original thinking **when I spent the half a million dollars** to buy that controlling interest, which turned out not to be controlling and that **they had a following, meaning housewives would historically, every year or whatever, buy canning lids**, and it was represented that by Loren Stieg, that that it was on an ongoing business.
                         \*\*\*
Q:  Well, Mr. Rautiola, the name of the company out in Colorado was S & S Innovations Corp. That's the name of the company that came from Colorado to Michigan. So why choose the name Tattler Home Products?
A:  I, I, I had -- we're talking about two different subjects now. I, I, **I was not interested in the company, per se, I was interested in the product**.
Q:  Why is that?
A:  Well, that's where the money is made and making the money and selling the product.  *Exhibit A, p 57-58*.  (Emphasis Added).

---

[1] A supplemental report could be necessary in order to account for Plaintiff's lost profits related to Defendants' 2021 infringement.

Rautiola's testimony is clear.  He, personally, selected the name "Tattler Home Products", and did so specifically to palm off on the plaintiff's "Tattler" trademark.  He (repeatedly testifying "I") chose the name of the company in order to capitalize on the goodwill of S&S's "Tattler" mark. Clearly, Rautiola is in agreement that Plaintiff's marks have significant value.

      *d.  The Court should award a significant amount of statutory damages to deter others from engaging in conduct similar to that of Defendants.*

For the sake of brevity, Plaintiff adopts the Statement of Facts set forth in its First Amended Complaint, initial Motion for Summary Judgment, and Motion for Summary Judgment in which to hold Rautiola individually liable to establish the absolutely outrageous nature of Defendants' conduct.  [ECF Nos. 32, 54-4, PageID. 721-732, and 117].  From 2014 to present day, including the egregious conduct in this case (ECF Nos. 94, 134, 139), Defendants made one calculated decision after another to impose harm, delay, and damages on Plaintiff.

No court should let any party to any lawsuit engage in conduct similar to that of Defendants.  They have intentionally and willfully infringed on Plaintiff's intellectual property rights, violated countless court orders, and made this entire case far more difficult than necessary for everyone involved.  A clear statement from the Court in the form of statutory damages is the proper means in which to put others on notice that such conduct will be tolerated.

In the same vein, a meaningful award in statutory damages is necessary to deter Defendants from engaging similar conduct in the future.  The Court record speaks for itself.  Defendants have employed every conceivable delay tactic and taken advantage of every opportunity to harm Plaintiff.  Defendants' efforts to do so have been so great that they exposed themselves to various forms of contempt.  Every superlative applies to Defendants' conduct - intentional, willful, egregious, obstructionist (ECF No. 134, PageID. 1516), and contumacious (ECF No. 134, PageID.

1520).  Statutory damages are the next means to send a clear message to Defendants, and to others considering conduct remotely close to that of Defendants.

> e.  *Defendants' conduct was intentional and willful, and warrants a significant statutory damages award.*

Notwithstanding the comprehensive nature of the record in this case, some factual background bears mentioning to support the statutory damages.  First, it is now abundantly clear that Defendants never had good faith intentions of doing business with Plaintiff and only acquired an interest in Plaintiff to commit intentional and willful intellectual property violations.  Specifically, almost immediately after signing the Stock Purchase Agreement on March 3, 2014 and the business was relocated from Colorado to Michigan, Rautiola formed his infringing shell company – Tattler Home Products, LLC – and commenced unlawfully conducting business under that name, *Exhibit E*.

On May 16, 2014, after the infringement began, Plaintiff's majority owner, Loren Stieg ("Stieg"), demanded that Defendant discontinue their unlawful conduct and cease infringement.  *Exhibit B*.  Rather than cooperate and adhere to their obligations to act in the best interest of Plaintiff, Defendants, at the direction of Rautiola, expelled Stieg from the premises and permanently distanced him from his company, all of its assets, including operational equipment, materials, and shipping supplies.  With all supplies and equipment in-hand, Defendants were fully stocked to start producing their counterfeit lids.

After Stieg brought his business from Colorado to Michigan in good faith and was ousted from the Nartron premises, the following seven years have been a nightmare.  Plaintiff's business suffered while Rautiola instituted protracted litigation in federal court against Stieg, and then again in state court.  Plaintiff had to start over:  buy new, and very expensive, equipment to make its lids,

purchase new materials and supplies, attempt to salvage customer relationships tarnished by Defendants' unlawful and infringing conduct, and on-and-on.

As Plaintiff's business suffered, Defendants engaged in intentional and willful infringement of Plaintiff's intellectual property, and profited from its brazen conduct.  It is not in dispute that every single lid produced by Defendants resulted in an infringement – each lid was imprinted with Plaintiff's registered Tattler trademark.  Each piece of packaging used to ship an infringing lid was emblazoned with Plaintiff's registered logo.  Further, Defendants created a website that was nearly a carbon-copy of Plaintiff's legitimate website.  This website is an obvious form of copyright infringement, but also used Plaintiff's trademarks throughout.  It cannot be overstated the number of times in which Defendants infringed on Plaintiff's rights.

Importantly, over the course of 7 years, Defendants' infringing conduct continued until the time they were ordered to deliver all infringing materials, and equipment, to Plaintiff.  But even these efforts left much to be desired.  Defendants readily admit to manufacturing and selling lids from 2014 – 2021 using the machine Stieg delivered from Colorado, yet they delivered a machine that was not functional claiming it was delivered in the same condition it was received.  *Exhibit F.* The transformer to the machine had been removed, thus requiring Plaintiff to purchase another transformer.  This is not only extremely underhanded, but it also raises serious concerns about destruction of evidence related to use-cycle information stored in the machine.  [ECF No. 139]. Also, Defendants still refuse to provide all the necessary information to transfer their infringing website and domain name to Plaintiff.  Additionally, Defendants did not deliver a single lid to Plaintiff despite ordering a significant amount of resin in 2021.  *Exhibit G.*

f. *Defendants have not cooperated in providing credible records to assess the value of the infringing material produced.*

Making matters even worse, Defendants' record keeping of its infringing conduct has been predictably uninformative.  At first, Defendants delayed in producing any documents, only then to produce documents that are untrustworthy.  Defendants' financial records are not maintained in the ordinary course of business, are freely discarded and disparaged by Rautiola himself, and are otherwise completely untrustworthy.  Make no mistake, this is not a coincidence.  It is another act designed to harm and mislead Plaintiff.  As a result, it is impossible to accurately determine the true nature and extent of Defendants' sales.  All of the Defendants' produced financial records are the subject of a forthcoming motion in limine which seeks to exclude each document from consideration by the court.

g. *A maximum statutory damages award has the potential for discouraging the Defendants.*

Tattler Home Products, LLC is a shell company set up by Rautiola for the purpose of selling counterfeit canning lids.  However, Nartron and Rautiola (through Nartron and other previous legal entities he has owned) have engaged in legal battles with various other companies for decades.  And it is no surprise that their conduct in those disputes has also been reprehensible.  For example:

(1)     in a contract dispute between Nartron and General Motors filed in 1994, GM obtained a judgment for discovery sanctions against Nartron in excess of ***$4 Million*** resulting from "discovery omissions and misconduct attributed primarily to Rautiola." *In re Nartron Corp.*, 330 B.R. at 579.

(2)     *Nartron Corporation v. Amway Corporation*, File No. 90-005238, p. 2 (Mich.Cir.Ct., Feb. 5, 1995) (The ultimate import of the motion [for limited reopening of proofs] is simply a further challenge to Norman Rautiola's credibility.  And again, the Court

concludes that there is abundant evidence before the Court in that regard.);

(3)      *Nartron Corporation v. General Motors Corporation*, Case No. 94-421-075, p. 1 (Mich.Cir.Ct., Jan. 2, 2001) (Nartron, through Rautiola and the head of the Advanced Product Development section, "intentionally altered relevant and significant evidence" and continued to produce altered versions of the evidence thus requiring dismissal of the case and the imposition of discovery sanctions.);

(4)      *Amway Corp. v. Nartron Corp.*, File No. 1:92:CV:156, p. 15 (W.D.Mich., Sept. 23, 1994) (Nartron patent found invalid due to one-year filing bar, following a product development dispute with Amway Corp. in which Nartron obtained a patent on the jointly-developed product.  Contradictions between Rautiola's filed declaration and prior testimony were unexplained.);

(5)      *D. C. Electronics, Inc. v. Nartron Corp.*, 511 F.2d 294 (6th Cir. 1975) (Temporary restraining order granted against Nartron and Rautiola for antitrust allegations under the Sherman Antitrust Act and Clayton Antitrust Act.);

(6)      *Nartron Corp. v. STMicroelectronics, Inc.*, 305 F.3d 397, 64 U.S.P.Q.2d 1761 (6th Cir. 2002) (Summary judgment affirmed on the basis that Nartron's trademark was generic and unenforceable.);

(7)      *Drew, Cooper & Anding, P.C. v. Oldnar Corporation*, No. 311028 (Mich. Ct. App. 2013) (Rautiola's prior entity was sued for $52,826.14 in unpaid legal fees).

This list of transgressions by Rautiola is far from exhaustive.  Which makes sense because illegal business practices and litigation are a source of entertainment for Rautiola.  As a matter of fact, Rautiola previously testified that litigation is a "game" to him.  This testimony was given during trial of the case Rautiola filed against Stieg in the Osceola County Circuit Court.  Rautiola

testified, "In filing a lawsuit is playing a different game. I'm going to call it a game. It's a game that borders on truth and reality, but only borders. So, it's a question of what was my legal situation to be determined by the courts and my legal team. That's a whole different question. That's a whole different question." *Exhibit H*.

It is apparent that Rautiola and Nartron are comfortable in a courtroom, and their conduct in this case demonstrates a total lack of remorse for their actions.   In fact, in response to a deposition question about a document production dispute, Rautiola even stated that "[t]his is, this is so small relative to the business of Nartron that, that it's, it's sort of a mosquito biting my tush." *Exhibit A, p 101*.   Furthermore, the Defendants have not just infringed the Plaintiff's trademark (in the form of counterfeits), but also engaged a concerted and strategic effort in this case to frustrate and delay Plaintiff at every turn.

It seems as though Rautiola will continue to create legal problems for others after this case has concluded, just as he has done for decades on end.   However, awarding a statutory damages award of $4,000,000 may have the desired effect of getting Rautiola's attention once and for all, and putting him on notice that his bad deeds have consequences.   And indeed, a statutory damage award of $4,000,000 will likely have the effect of discouraging Rautiola from similar behavior in the future.

The requested statutory damages are not putative or excessive, and are consistent with balancing all relevant factors.   The baseline level of damages is consistent with how courts throughout the country have applied 15 U.S.C. § 1117(c)(2).   See, *Louis Vuitton Malletier & Oakley, Inc v Veit*, 211 F Supp 2d 567, 584-85 (E.D. Pa., 2002) (Court awarded $1,500,000 in baseline statutory damages "given the egregious conduct of the Defendants and the use of the internet."); *Louis Vuitton Malletier SA v LY USA, Inc*, 676 F3d 83 (2nd Cir. 2012) (awarding

statutory damages in the amount of $3 million and more than $500,000 in attorney's fees and

costs.); *Seiko Epson Corp v Koshkalda*, 799 F App'x 463, 466 (9th Cir. 2019) ("[T]he district

court's award of $12 million in statutory damages was within the court's discretion."

Finally, it should be noted that Plaintiff is not yet electing the form of damages it will

pursue at trial.  Rather, it is requesting that the Court make an award of statutory damages as an

alternative basis of relief which Plaintiff may choose to accept, though the statutory damages

awarded by the Court may very well resolve the case.

## V.   PLAINTIFF IS ENTITLED TO STATUTORY DAMAGES BASED ON DEFENDANTS' WILLFUL INFRINGEMENT OF PLAINTIFF'S COPYRIGHT.

Similar to damages for trademark and counterfeit infringement, federal law provides for

statutory damages based on a defendant's infringement of a copyright.  Also, damages are

enhanced in the event of a "willful" infringement.  "In a case where the copyright owner sustains

the burden of proving, and the court finds, that infringement was committed willfully, the court in

its discretion may increase the award of statutory damages to a sum of not more than $150,000."

17 U.S.C. § 504(c)(2).

A successful plaintiff in a combined copyright and trademark infringement action is

entitled to separate awards of statutory damages under both the Copyright Act and the Lanham

Act when a defendant has infringed both the owner's trademarks and copyrights.  *Nintendo of*

*America, Inc. v. Dragon Pacific International,* 40 F.3d 1007, 1011 (9th Cir. 1994) (a defendant

commits "two wrongs" when defendant's actions violate both the Copyright Act and the Lanham

Act; to "effectuate the purposes of both statutes, damages may be awarded under both.") See also,

*Microsoft Corporation v. Compusource Distributors, Inc.,* 115 F. Supp.2d 800, 812 (E.D. Mich.

2000).

On December 5, 2018, Plaintiff obtained a copyright registration on its website – reusablecanninglids.com.  *Exhibit I*.  Defendants, at some point, created a competing website – tattlerproducts.com.  The almost carbon-copy nature of Defendants' website is well-documented. On January 4, 2021, the Court stated, "THP's website uses some of the exact same images (some of which also bear the Tattler logo), text, and customer testimonials as are featured on S&S's copyrighted website."  [ECF No. 64, PageID. 904].

For the above stated reasons, it cannot reasonably be disputed that Defendants' conduct was willful.  Given the facts of this case as a whole, there is no question that Defendants intentionally copied images, customer testimonials, and text for the purpose of creating their own website to directly compete with Plaintiff.  This was yet another conscious decision by Defendants to infringe upon Plaintiff's intellectual property rights.

Plaintiff requests that this Court award the statutory maximum of $150,000.

## VI.    PLAINTIFF IS ENTITLED TO ATTORNEYS' FEES PURSUANT TO 15 U.S.C. §§ 1117(b) AND 1117(a).

Similar to treble damages, the Lanham Act requires that Defendants pay Plaintiff's attorneys' fees based on their infringing conduct.  Pursuant to 15 U.S.C. § 1117(b), the "court shall…enter judgment for three times such profits or damages, whichever amount is greater, together with a reasonable attorneys' fees…."  Where a counterfeit mark is used, an award of reasonable attorneys' fees is mandated, unless the court finds extenuating circumstances.  *U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185 (6th Cir. 1997)  This case does not involve extenuating circumstances and Plaintiff is entitled to recovery of its attorneys' fees.  Defendants intentionally used Plaintiff's registered marks, knowing that the marks were registered by Plaintiff.

Additionally, 15 U.S.C. § 1117(a) provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party."  Cases involving the use of counterfeit

marks also qualify for an award of attorney fees under § 1117(a)  See, *Audi AG v. D'Amato*, 469 F.3d 534, 551 (6th Cir. 2006) ("We hold that given D'Amato's bad faith use of counterfeit marks, the district court did not abuse its discretion in awarding attorneys' fees under section 1117(a).") An attorney fee analysis under § 1117(a) requires (1) that the party requesting an attorney fee award be a prevailing party, and (2) that it be an exceptional case.  Undoubtedly Plaintiff is a prevailing party by way of the court's January 4, 2021 order on the issue of liability.

The Sixth Circuit has held that "a case is not exceptional unless 'the infringement was malicious, fraudulent, willful, or deliberate.'" *Eagles, Ltd. v. Am. Eagle Found*, 356 F.3d 724, 728 (6th Cir. 2004) (quoting *Hindu Incense v. Meadows*, 692 F.2d 1048, 1051 (6th Cir. 1982))  As argued above, the court's January 4, 2021 opinion also concluded on several occasions that Defendants' actions were intentional, and Plaintiff has also argued above that Defendants' actions were willful.  For those same reasons, this is an exceptional case and attorneys' fees should be awarded under § 1117(a).

## VII.    PLAINTIFF IS ENTITLED TO PREJUDGMENT INTEREST PURSUANT TO 15 U.S.C. § 1117(b).

"In such a case, the court may award prejudgment interest … beginning on the date of the service of the claimant's pleadings setting forth the claim for such entry of judgment and ending on the date such entry is made, or for such shorter time as the court considers appropriate."  15 U.S.C. § 1117(b).  As argued above, any damages provided under § 1117(b) should be awarded in this case.  The Defendants intentionally used a mark knowing that such mark was a counterfeit of Plaintiff's federally-registered trademark, and Defendants were put on notice of their infringing behavior shortly after it began in 2014.   Therefore, Plaintiff should also be awarded any prejudgment interest as permitted under the Lanham Act.

**<u>CONCLUSION</u>**

WHEREFORE, Plaintiff, S&S Innovations Corp., respectfully requests that this Court enter an Order granting its Motion for Summary Judgment, enter an Order finding that Defendants engaged in intentional and willful infringement, award of $4,000,000 in statutory damages for trademark and counterfeit infringement, award $150,000 in statutory damages for copyright infringement, and award Plaintiff attorneys' fees, costs, and prejudgment interest for the above stated reasons.


Dated:  April 23, 2021                    KUIPER KRAEMER PC
                                          Attorney for Plaintiff

                                          By: /s/ Nicholas V. Dondzila
                                                Nicholas V. Dondzila (P73937)

                                          BUSINESS ADDRESS AND TELEPHONE:
                                                180 Monroe Avenue, Suite 400
                                                Grand Rapids, MI 49503
                                                (T): (616) 454-3700
                                                dondzila@k2legal.com


Dated:  April 23, 2021                    OPPENHUIZEN LAW PLC
                                          Attorney for Plaintiff

                                          By: /s/ David L. Oppenhuizen
                                                David L. Oppenhuizen (P70219)

                                          BUSINESS ADDRESS AND TELEPHONE:
                                                5960 Tahoe Dr SE, Ste. 105
                                                Grand Rapids, MI 49546
                                                (T) (616) 242-9550
                                                david@oppenhuizen.com