UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


S&S INNOVATIONS CORPORATION,

      Plaintiff,

v.                                                                     Case No. 1:18-cv-1377

UUSI, LLC, d/b/a/ NARTRON, et al.,               Hon. Hala Y. Jarbou

      Defendants.

_____/


## **OPINION**

This is an action asserting trademark infringement, trademark counterfeiting, unfair competition, and copyright infringement.  (First Am. Compl., ECF No. 32.)[1]  Plaintiff S&S Innovations Corporation (S&S) brings a second motion for summary judgment.  (ECF No. 117.) S&S seeks summary judgment on its claim for copyright infringement against Defendant UUSI, LLC (doing business as Nartron), summary judgment on all claims against Defendant Norman Rautiola, and to pierce the corporate veil between Rautiola and Nartron, as well as between Rautiola and Defendant Tattler Home Products, LLC (THP).  The motion will be granted in part and denied in part.

### **I. Factual Background**

Most of the following facts come from the Court's opinion addressing S&S's first motion for summary judgment.  (1/4/2021 Op., ECF No. 64.)  Supplemental facts provided in the exhibits accompanying the present motion for summary judgment will be cited as needed.

---

[1] The First Amended Complaint also alleges cybersquatting, but that claim has since been dismissed.  (ECF No. 76.)

## A. Parties

S&S is co-owned by Loren Stieg, who holds a majority stake with 51% of shares, with Nartron holding the remainder. (*Id.*, PageID.884.) Rautiola is the managing member of Nartron. (*Id.*) Rautiola is also the managing member of THP, which he personally formed. (*Id.*) THP has no members besides Rautiola. (Rautiola Dep. 13, ECF No. 117-3.)

## B. Facts

### 1. Events leading to lawsuit

Stieg invented, designed, and began manufacturing reusable canning lids in 1976. (1/4/2021 Op., PageID.884.) He sold these products under the trade name "Tattler" and "Tattler Reusable Canning Lids." In 2010, Stieg formed S&S with his son to carry on the Tattler business. Stieg held a 51% stake in S&S, while his son held the remaining 49 percent. (*Id.*) In 2014, Stieg sought to buy out his son and sell a minority stake in S&S. Stieg found an interested buyer in Nartron. For reasons not germane to the present motion, approximately $170,000 of debt owed by S&S had to be cleared before the buyout-and-sale could occur. Rautiola, acting on behalf of Nartron, provided the funds needed to pay the debt. (*Id.*) Stieg then bought out his son and sold a 49% stake in S&S to Nartron for $490,000. The transaction concluded in March 2014.

Rautiola and Nartron cut Stieg out of the business. In April 2014, Rautiola formed THP and began to sell Tattler products through that company rather than through S&S. Though THP would market and sell Tattler goods, the products themselves were manufactured by Nartron. (*Id.*) THP indisputably used S&S intellectual property through its operations. Stieg objected to THP's formation and operation, feeling that it was a usurpation of S&S's business. He claimed that THP infringed S&S's intellectual property. Rautiola countered that, by virtue of the additional

$170,000 payment to facilitate the buyout transaction, Nartron purchased a 66% stake in S&S.[2]
Litigation ensued. (*Id.*, PageID.885.)  In October 2017, a jury convened in state court determined
that the $170,000 payment was a loan, not an equity purchase.  Stieg was confirmed as the majority
owner of S&S.  (*Id.*)  Nartron and Rautiola could not have validly licensed S&S intellectual
property to THP over Stieg's objection.

Nevertheless, THP continued to sell reusable canning lids bearing the "Tattler" logo and
used other intellectual property owned by S&S.  Nartron continued to manufacture Tattler products
for THP.  THP and S&S had competing websites, though Defendants recently turned the domain
to THP's site over to S&S.  (ECF No. 152.)

### 2. S&S intellectual property

In 2011, the United States Patent and Trademark Office (USPTO) registered the Tattler
logo with S&S as the owner of Registration No. 4005734.  (1/4/2021 Op., PageID.886.)  In
November 2018, S&S filed a federal trademark application to trademark the word "Tattler" used
in connection with "plastic lids."  The USPTO approved the application as Registration No.
5,787,373 in June 2019.  (*Id.*)  Effective December 2018, S&S registered its website with the
United States Copyright Office (registration number TXu 2-115-949), and S&S holds exclusive
rights to the site and its contents.  (*Id.*)  S&S also holds common law trademark rights in the Tattler
name and logo.  The Tattler mark has been used in the manufacture and sale of the reusable canning
lids designed by Stieg since the 1970s.  (*Id.*)

---

[2] In a recent deposition, Rautiola contended that he, rather than Nartron, purchased a stake in S&S.  (Rautiola Dep.
15-16.)  However, the stock purchase agreement shows that Nartron, not Rautiola, purchased 49% of S&S' common
stock for $490,000.  (ECF No. 54-11, PageID.783.)

## II. Procedural History

The following procedural history is relevant here.  S&S filed its original complaint in December 2018.  (ECF No. 1.)  In January 2019, Defendants moved to dismiss the complaint on the basis of claim preclusion.  (ECF No. 8.)  The Court denied that motion, finding that a Rule 12(b)(6) motion was not the proper vehicle for raising claim preclusion as an affirmative defense.  (ECF No. 21.)  Defendants reiterated their claim preclusion defense in a joint status report.  (ECF No. 26.)  In May 2020, after a scheduling conference, the Court issued a case management order.  (ECF No. 28.)  The order set a September 30, 2020, deadline for "Early Dispositive Motions," which was Defendants' deadline to file a motion raising claim preclusion.  (*Id.*, PageID.449.)

Shortly thereafter, S&S filed an amended complaint.  (ECF No. 32.)  The First Amended Complaint asserts five claims against all Defendants: (1) trademark infringement; (2) federal trademark counterfeiting; (3) unfair competition; (4) cybersquatting; and (5) copyright infringement.  The first three claims were based on Defendants' respective involvement in the manufacture and sale of reusable canning lids bearing S&S's trademarked "Tattler" logo.  The fourth and fifth claims related to THP's website, which allegedly infringed S&S's own copyrighted website.  Defendants answered in June 2020 but did not assert claim preclusion as an affirmative defense.  (ECF No. 35.)

Defendants did not avail themselves of the Early Dispositive Motion deadline to assert claim preclusion either.  They never filed anything.  But S&S did.  In September 2020, S&S moved for summary judgment on all claims against all Defendants.  (ECF No. 54.)  Defendants never responded.  The Court rendered an opinion on the motion in January 2021.  (ECF No. 64.)  Because Defendants did not respond to S&S's motion for summary judgment, the Court assumed that the assertions of facts made in S&S's brief were undisputed.  (*Id.*, PageID.889.)

In light of those undisputed facts, the Court determined that THP had committed trademark infringement, trademark counterfeiting, unfair competition, and copyright infringement.  The Court further found that S&S had proved its claims of trademark infringement, trademark counterfeiting, and unfair competition against Nartron.  S&S had not shown that Nartron was meaningfully involved with the creation or design of THP's website, so the Court denied summary judgment against Nartron on the copyright infringement claim.  S&S also failed to prove that Rautiola was sufficiently involved in the alleged misconduct, thus the Court denied summary judgment on all claims against him.  Finally, the Court found S&S's claim of cybersquatting lacked merit and denied summary judgment on that claim against all Defendants.  S&S later voluntarily dismissed the cybersquatting claim.  (ECF No. 76.)

S&S made its first motion for summary judgment before it had the chance to depose Rautiola.  S&S deposed him on February 16, 2021 (ECF No. 117-3), and brought the present motion for summary judgment about a month later.

### III. Standard

Summary judgment is appropriate when the moving party demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Courts must examine the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," to determine whether there is a genuine dispute of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P 56(c)) (internal quotations omitted).  A fact is material if it "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A material fact is genuinely disputed when there is "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249 (citing *First Nat'l Bank. of Ariz. v. City Serv. Co.*, 391 U.S. 253, 288-89 (1961)).  "Where the record taken as a whole could not lead a rational trier of fact to find

for the non-moving party [by a preponderance of the evidence], there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *City Serv.*, 391 U.S. at 289).  In considering the facts, the Court must draw all inferences in the light most favorable to the nonmoving party. *Id.*  Summary judgment is not an opportunity for the Court to resolve factual disputes. *Anderson*, 477 U.S. at 249.

### IV. Analysis

In the present motion for summary judgment, S&S seeks to "resolve the remaining liability issues of this case." (Pl.'s Br., ECF No. 117-1, PageID.1376.)  To do so, S&S asks for four things: (1) to pierce the corporate veil between Rautiola and THP; (2) to pierce the corporate veil between Rautiola and Nartron; (3) to obtain summary judgment on all four outstanding claims against Rautiola; and (4) to obtain summary judgment on its claim for copyright infringement against Nartron, the sole remaining claim against that company.

#### A. Piercing the Corporate Veil

S&S seeks to pierce the corporate veil between: (1) THP and Rautiola; and (2) Nartron and Rautiola.  Doing so would render Rautiola personally liable for the claims against THP and Nartron.  The parties agree that piercing the corporate veil is a remedy, not a claim.  They disagree, however, on whether a motion for summary judgment is an appropriate means to pierce the corporate veil.  It is.

Piercing the corporate veil is an equitable remedy.  *DAGS II, LLC v. Huntington Nat'l Bank*, 616 F. App'x 830, 840 (6th Cir. 2015) (quoting *Arevelo v. Arevalo*, Nos. 285548, 286742, 2010 WL 1330636, at *16 (Mich. Ct. App. Apr. 6, 2010) (citing *Foodland Distribs. v. Al-Naimi*, 559 N.W.2d 379, 380 (Mich. Ct. App. 1996))).

Defendants argue that equitable remedies cannot be obtained through summary judgment since Rule 56(a) only lists "claim[s]" and "defense[s]" as subject to summary judgment.  This is

an overly narrow reading of the Federal Rules of Civil Procedure which has been implicitly rejected by the Sixth Circuit.  *See, e.g.*, *DAGS II, LLC*, 616 F. App'x at 831 (entertaining veil-piercing on summary judgment); *CNH Cap. Am. LLC v. Hunt Tractor, Inc.*, 568 F. App'x 461, 465 (6th Cir. 2014) (same); *Int'l Millennium Consultants, Inc. v. Taycom Bus. Sols.*, 463 F. App'x 506, 510-11 (6th Cir. 2012) (reversing district court for granting motion to pierce corporate veil where motion was not properly brought under any Federal Rule of Civil Procedure).

Indeed, the ability to seek equitable relief on summary judgment is an inherent consequence of the merger of law and equity under the Federal Rules of Civil Procedure.  *See* Charles Wright & Arthur Miller, *Federal Practice & Procedure* § 4513 (4th ed.) ("The Rules formally merged law and equity into one 'civil action.'"); *id.* § 2731 ("[I]f there is no triable fact issues and the court believes equitable relief is warranted, it is fully empowered to grant it on a Rule 56 motion.").  S&S's request to pierce the corporate veil is properly brought through Rule 56.

Next, Defendants argue that piercing the corporate veil is inappropriate because S&S has not established that the harms at issue "arise[] from 'an "injustice" cause[d] by the misuse of the corporate form.'"  (Defs.' Opp'n Br., ECF No. 136, PageID.1526 (quoting *Keystone Mfg., LLC v. Accuro Med. Prods., LLC*, No. 1:12-cv-1186, 2013 WL 2318885, at *4 (W.D. Mich. May 28, 2013) (citing *Soloman v. Western Hills Dev. Co.*, 312 N.W.2d 428, 432 (Mich. Ct. App. 1981)))).[3]  Defendants miss the mark.

Where the other elements are met, even "a breach of contract can be the kind of wrong that justifies piercing the corporate veil" so long as there is a nexus between the wrongful act and the abuse of the corporate form.  *EPLET, LLC v. DTE Pontiac North, LLC*, 984 F.3d 493, 499 (6th

---

[3] The Court reproduces the text as given in Defendants' brief, but notes that Defendants provided an immaterially imprecise quotation of the language in *Keystone Manufacturing*.

7

Cir. 2021); *see also Gallagher v. Persha*, 891 N.W.2d 505, 513-14 (Mich. Ct. App. 2016) (wrongful acts include "the violation of a statutory or other positive legal duty, or a dishonest and unjust act in contravention of [the] plaintiffs' legal rights" (internal citations and quotation marks omitted)).

This nexus need not be direct, however. The Michigan Supreme Court "has never held that a complainant must prove that the owner of an entity used the entity to commit a *specific* fraud or wrong." *Green v. Ziegelman*, 873 N.W.2d 794, 806 (Mich. Ct. App. 2015) (citing *Gledhill v. Fisher & Co.*, 262 N.W. 371, 372 (Mich. 1935)) (emphasis added). Rather, the question is whether "the owner exercised its control over the entity in a *manner* amounting to a fraud or wrong under such circumstances that a court 'would aid in the consummation of a wrong' if it were to honor the separate existence of the entity." *Id.* (quoting *Gledhill*, 262 N.W. at 372) (emphasis in original). If S&S can make such a showing with respect to Rautiola's relationship with THP or Nartron, then the corporate veils may be pierced.

The above discussion encompasses the only two arguments Defendants make against S&S's request to pierce the corporate veil. Nevertheless, it is S&S's burden to show that it is entitled to summary judgment, and the Court does not grant equitable relief unless it believes such relief is warranted. Therefore, the Court will examine the propriety of piercing the corporate veil between Rautiola and THP as well as Rautiola and Nartron.

### 1. When the corporate veil may be pierced

"When considering piercing the corporate veil, a court usually applies the law of the state of incorporation of the allegedly offending entity." *Gold Crest, LLC v. Project Light, LLC*, No. 5:19-cv-2921, 2021 WL 918281, at *13 (N.D. Ohio Mar. 10, 2021) (citing *Institut Pasteur v. Cambridge Biotech Corp.*, 186 F.3d 1356, 1376 n.11 (Fed. Cir. 1999)). THP and Nartron are both organized under Michigan law. Thus, the question is whether Michigan law permits piercing the

Case 1:18-cv-01377-HYJ-PJG   ECF No. 186,  PageID.2525   Filed 05/24/21   Page 9 of 15


corporate veil here.  The standard for veil-piercing applies equally to limited liability companies as it does to corporations.  *Florence Cement Co. v. Vettraino*, 807 N.W.2d 917, 922 (Mich. Ct. App. 2011).

"There is no single rule delineating when the corporate entity may be disregarded." *Foodland Distribs.*, 559 N.W.2d at 381.  "The entire spectrum of relevant fact forms the background for such an inquiry, and the facts are to be assessed in light of the [LLC's] economic justification to determine if the corporate form has been abused."  *Klager v. Robert Meyer Co.*, 329 N.W.2d 721, 725 (Mich. 1982).  There are three prongs: (1) instrumentality; (2) fraud or wrong; and (3) unjust loss or injury to the plaintiff.  *Foodland Distribs.*, 559 N.W.2d at 381 (internal citations and quotation marks omitted).

The elements are analyzed step by step.  First, the "court must determine whether the evidence establishes that the owner operated the entity as his or her alter ego—that is, as a sham or mere agent or instrumentality of his or her will."  *Green*, 873 N.W.2d at 807.  If so, the court asks whether "the owner exercised his or her control over the entity in such a manner as to wrong the complainant."  *Id.*  Finally, the court "must determine whether the wrong would cause the complainant to suffer an unjust loss."  *Id.* at 807.

A variety of factors are commonly examined to determine the above prongs, including: "(1) whether the [LLC] is undercapitalized, (2) whether separate books are kept, (3) whether there are separate finances for the [LLC], (4) whether the [LLC] is used for fraud or illegality, (5) whether corporate formalities have been followed, and (6) whether the [LLC] is a sham."  *Glenn v. TPI Petroleum, Inc.*, 854 N.W.2d 609, 520 (Mich. Ct. App. 2014) (citing *Laborers' Pension Tr. Fund v. Sidney Weinberger Homes, Inc.*, 872 F.2d 702, 704-05 (6th Cir. 1988)).  However, these

factors are non-exhaustive, and courts must consider all relevant facts that make up the totality of the circumstances.  *Green*, 873 N.W.2d at 807.

### 2. The veil between Rautiola and THP

Considering "the entire spectrum of relevant fact[s]," the Court finds that the corporate veil between Rautiola and THP should be pierced.

THP cannot be described as undercapitalized, although a bizarre amount of money flows through its bank account.  In 2014, THP had revenues of approximately $322,000—an atypically strong performance.  (Rautiola Dep. 94 ("Boy, that was a good year[.]").)  In the past year, Rautiola says sales amounted to "just a few thousand dollars[.]"  (*Id.* 34.)   Yet millions of dollars are deposited into and withdrawn from THP's bank account: $2.5 million in 2016, $5.5 million in 2017, and $15.6 million in 2018.[4]  (ECF Nos. 117-8, 117-9.)

Of course, it is hard to tell exactly how much money THP makes because the company maintains no accounting whatsoever.  THP's balance sheet is not recorded or tracked, no income statements are produced, and no profit-and-loss statements are maintained.  (Rautiola Dep. 56.)  In fact, information regarding THP's income and expenses were extracted from production and sales data kept by *Nartron*, which manufactures the canning lids THP sells.  (*See* Rautiola Aff. ¶ 7, ECF No. 117-10.)  According to Rautiola, THP's revenues are attributed to Nartron.  (Rautiola Dep. 108 ("Q: Whose books does [THP's] money go on? A: Nartron's books.").)  He decided that THP's business was "not big enough to exp[e]nd the extra cost" of maintaining accounting for THP separate and apart from Nartron.  (*Id.*)

---

[4] Despite these large inflows, THP's monthly ending balance never exceeded $1.4 million, indicating that the vast majority of money deposited would be quickly withdrawn.  (*See* ECF No. 117-9, PageID.1460 (highest ending balance of $1,421,851.57 in December 2018).)

Ledgers are not the only thing missing from THP. The company has no employees. (*Id.* at 53.) THP does not purchase the materials used to manufacture the Tattler canning lids—Nartron does. (*Id.* at 52-53.) The lids themselves are manufactured on Nartron's premises by Nartron employees. (*Id.* at 52-53, 163.) Rautiola is the sole owner of THP. (*Id.* at 13.) In his words, "Tattler Home Products is not operated as a separate company" from Nartron, "[i]t's operated as a department." (*Id.* at 52-53.) "It's not a freestanding corporation." (*Id.* at 53.) The Court is not aware of *any* corporate formalities observed at THP. Simply put, THP is a sham entity, Rautiola's alter ego.

And Rautiola used his control over THP to commit wrongs against S&S. It has already been established that THP infringed trademarks and copyrights possessed by S&S, counterfeited S&S's Tattler trademark, and unfairly competed with S&S. (1/4/2021 Order, ECF No. 65.) THP has violated S&S's legal rights. Created by Rautiola, THP's inherent purpose is to manufacture and sell reusable canning lids in ways that infringe S&S's intellectual property. (*See* ECF No. 117-5 (THP quotation offering sale of Tattler canning lids to customer); Rautiola Dep. 30-31 (Rautiola authorized cited transaction).) The company's name confirms its purpose. It is called *Tattler* Home Products and it makes *Tattler* reusable canning lids.

Where a company exists to infringe, it "'would aid in the consummation of a wrong'" to permit that company's sole creator, owner, and manager to insulate himself from liability resulting from that company's purpose. *Green*, 873 N.W.2d at 806 (quoting *Gledhill*, 262 N.W. at 372). The Court finds that all three prongs of the veil-piercing analysis have been established here, and that equity warrants piercing THP's corporate veil to reach Rautiola. The corporate veil between Rautiola and THP will therefore be pierced.

### 3. The veil between Rautiola and Nartron

Based on the evidence provided by S&S, piercing the corporate veil between Rautiola and Nartron is not justified.  Rautiola is Nartron's managing member.  Merely being in charge of a company does not open the door to veil-piercing.  And though Rautiola treats THP as a department in Nartron, the record reflects many more corporate formalities are observed at the latter company.

Nartron maintains business records and has its own accounting department.  (*See id.* at 127.)  It also has a "purchasing department" and a "molding department, which is part of the overall plastics department[.]" (*Id.* at 52, 55.)  It has employees.  (*See id.* at 57.)  S&S has not produced any of Nartron's financial records, so the Court cannot say whether the company is undercapitalized.  Perhaps all the money flowing in and out of THP's bank account has to do with Nartron, which is what S&S suggests, but there is no evidence establishing such a connection— and really, that has more to do with the relationship between THP and Nartron, not Nartron and Rautiola.

Most of what S&S points to demonstrates the lack of a formal distinction between THP and Nartron.  But that does not mean there is a similar lack of distinction between *Rautiola* and Nartron.  Nartron is not a mere instrumentality of Rautiola simply because THP is.

To be fair, there are some red flags.  Rautiola is convinced that he, personally, owns a stake in S&S.  (*Id.* at 15-16.)  But Nartron has an ownership interest in S&S, not Rautiola.  (Stock Purchase Agreement, ECF No. 54-11, PageID.783.)  Rautiola also seems to be unaware that UUSI, LLC, *is* Nartron, not a distinct entity.  (Rautiola Dep. 52-53.)  It is possible to construe these facts as suggesting Rautiola views Nartron as an alter ego; its corporate form irrelevant.  However, drawing inferences in Defendants' favor, a jury could reasonably see a man confused about some old transactions and the goings-on of the company he runs.  And in light of the corporate formalities discussed above, the Court finds that piercing the corporate veil is not appropriate based

on the record presented.  Veil-piercing is a remedy that should be invoked "sparingly." *Gallagher*, 891 N.W.2d at 509.  S&S has not made a sufficient showing here.

### B. Outstanding Claims Against Rautiola

Defendants oppose S&S's motion for summary judgment against Rautiola on the grounds that Rautiola was a contributory infringer.   The problem, Defendants say, is that direct infringement is a distinct cause of action from contributory infringement, and S&S did not plead any claim for contributory infringement in its complaint.   It is true that direct and indirect infringement are separate causes of action. *See Ohio State Univ. v. Redbubble, Inc.*, 989 F.3d 435, 444 (6th Cir. 2021) (direct trademark and vicarious trademark infringement claims require proving different elements).  But the proper question is whether S&S's complaint "contain[s] either direct or inferential allegations with respect to all material elements necessary to sustain a recovery under some viable legal theory." *Id.*  The allegations in S&S's complaint describe a concerted effort by all Defendants and allege the interrelationships between the Defendants.  These allegations are sufficient to draw inferences regarding indirect forms of infringement.

Moreover, the Sixth Circuit in *Redbubble* noted that the plaintiff in that case had failed to discuss vicarious liability in the complaint *or* its subsequent motion for summary judgment. *Id.* Here, S&S raised contributory infringement in its first motion for summary judgment—a motion Defendants did not find necessary to respond to.  Finally, the Court notes that "recovery on 'a valid claim' even where counsel 'fail[ed] to perceive the true basis of the claim at the pleading stage' is proper 'provided that such a shift . . . does not work to the prejudice of the opposing party.'" *Alexander v. Carter for Byrd*, 733 F. App'x 256, 265 (6th Cir. 2018) (quoting *Colonial Refrigerated Transp., Inc. v. Worsham*, 705 F2d 821, 825 (6th Cir. 1983)) (emphasis omitted). Defendants have not attempted to show how they would be prejudiced by S&S's assertion of indirect infringement claims, assuming such claims were unpled in the complaint.  And the Court

13

would find any prejudice argument dubious, considering that, in its previous motion for summary judgment, S&S claimed contributory infringement by Rautiola and Nartron without any protest from Defendants.

For these reasons, the Court will consider S&S's assertion of indirect infringement against Rautiola as THP's sole proprietor.  Defendants do not address this theory of liability against Rautiola.  (*See* Pl.'s Reply Br., ECF No. 145, PageID.2003.)  S&S argues that Rautiola, as sole proprietor of THP, is personally liable for THP's infringing conduct.  (Pl.'s Br., PageID.1381.)  Defendants do not take up this argument.  S&S is correct: "a corporate officer who is the 'sole shareholder, officer, and director of the corporate infringer is personally liable.'"  *Simmons v. Cook*, 701 F. Supp. 2d 965, 990 (S.D. Ohio 2010) (quoting J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 25:24 (4th ed. 2005)).  Rautiola is THP's managing member, its only member, and THP otherwise has no employees.  THP's infringement has already been established.  Summary judgment will therefore be entered against Rautiola on all remaining claims.

### C. Copyright Infringement Claim Against Nartron

S&S claims that Nartron is a contributory copyright infringer due to its purported involvement in THP's copyright-infringing website.  Defendants counter that "there is no evidence that [Nartron] was involved in the creation of the THP website," and that Nartron therefore cannot be liable for the outstanding copyright infringement claim.  (Defs.' Opp'n Br., PageID.1535.)  They are correct.

A party commits contributory copyright infringement "by intentionally inducing or encouraging direct infringement."  *Metro-Goldwyn-Meyer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005).  S&S points to nothing in the record showing that Nartron induced or encouraged THP's direct infringement through its website.  S&S states that "Nartron employees were deeply

invested in the [infringing] website and received all the benefit of the online sales." (Pl.'s Br., PageID.1394.) Maybe so, but such assertions sound in vicarious infringement, not contributory infringement. *See Grokster*, 545 U.S. at 930 (vicarious copyright infringement is "profiting from direct infringement while declining to exercise a right to stop or limit it"). Contributory infringement is a different claim than vicarious infringement. *Redbubble*, 989 F.3d at 442 n.1. S&S has not shown that it is entitled to summary judgment against Nartron on a claim of contributory copyright infringement.

### V. Conclusion

For the foregoing reasons, S&S's motion for summary judgment will be granted in part and denied in part. The Court will pierce the corporate veil between Rautiola and THP, but not between Rautiola and Nartron. The Court will enter summary judgment on the claims asserted against Rautiola individually, but will deny summary judgment on the claim for contributory copyright infringement against Nartron. An order will enter consistent with this opinion.


Dated:   May 24, 2021                           /s/ Hala Y. Jarbou
                                                HALA Y. JARBOU
                                                UNITED STATES DISTRICT JUDGE